SHERIDAN *v.* KURZ.

1. COVENANTS—RESIDENCE RESTRICTIONS—ESTOPPEL—ACQUIESCENCE IN SLIGHT DEVIATION.

In subdivision wherein lots were restricted to use for residence purposes only, while plaintiffs may be estopped from enforcing restriction as to use in violation thereof that was a slight deviation from the strict letter of such restriction theretofore acquiesced in, they would not therefor be estopped from opposing a more flagrant violation of restrictions.

2. SAME—CASES DETERMINED ON OWN PARTICULAR FACTS.

Building restriction cases so differ in their facts that, in the main, each must be determined on its own particular facts.

3. SAME—ESTOPPEL—WAIVER—PREVIOUS RELAXATION.

Plaintiffs in building restriction cases are entitled to relief even though there may have been some relaxation, so long as there still remains something of substantial value to those entitled to enforce it insofar as they are not affected by the principles of estoppel or waiver.

4. SAME — INJUNCTION — WAIVER — LACHES — ESTOPPEL — EVIDENCE—RESIDENCE—GENERAL AUTOMOTIVE REPAIR BUSINESS IN GARAGE.

In suit to enjoin violation of restriction of use of city lot to residence purposes, testimony failed to establish waiver, laches, or estoppel on part of plaintiffs where, although defendant's grantor had some 5 or 6 years previously erected a 22' x 46' building and repaired and rebuilt cars and conducted experimental work on engines, defendant's general automotive repair business involving use of wrecker, bumping, restarting and adjustment of motors, use of residential street as a spasmodic proving ground and floodlighting of his own and adjacent premises at night was a more flagrant violation.

Appeal from Oakland; Holland (H. Russel), J. Submitted January 16, 1946. (Docket No. 8, Calendar No. 43,203.) Decided March 4, 1946.

Effect of laches and acquiescence in breaches by another with respect to enforcement of covenants restricting use of land, see 5 Restatement, Property, §§ 561, 562.

Discharge by estoppel of covenants restricting use of land, see 5 Restatement, Property, § 559.

Bill by Patrick Sheridan and others against Russell G. Kurz and wife to enjoin violation of use restrictions. Decree for plaintiffs. Defendants appeal. Affirmed.

*Estes & Cooney,* for plaintiffs.

*Odin H. Johnson,* for defendants.

BUSHNELL, J. Plaintiffs own lots, on which they reside, in the McConnell addition to the city of Pontiac. Defendants Russell G. Kurz and wife live on lot 45 in this subdivision, their title having been acquired by deed from Adolph F. Netzel and wife on June 21, 1943. This subdivision was platted in 1898, and various recorded deeds since that date, including that of defendants, contain covenants restricting the use of the premises to "residence purposes only." According to the testimony, this subdivision consists of 140 lots, and the only properties that have ever been used for other than residence purposes are those now occupied by "the American Legion Home, a Lutheran church and a school operated by said church."

Defendants' grantor, Netzel, purchased lot 45 in 1935, and occupied it thereafter as a home. He never had any signs indicating that he used the premises for business purposes.

In 1937, Netzel erected a frame garage 22x30 feet on the rear of his lot, and in 1938 enlarged this garage by a 16x22-foot, one-story frame addition, with a cement floor. Netzel at the time was operating the Acme Auto Parts on North Perry street, where he repaired and rebuilt cars. He testified that, after disposing of his Perry street wrecking yard, he did experimental work on engines, which he rebuilt in the garage at his home, and that he employed for this purpose from three to six men. He

stated that he always had a number of cars and trucks in and out of the property from time to time, and that he was also interested in similar businesses in Durand, Michigan, and Fostoria, Ohio.

The building in question had the appearance of a three-car garage and was equipped with a chimney and facilities for heating. Netzel had a 220-volt power line run into the garage and had six engine rebuilding stands therein, equipped with gas and compressed air lines. Although Kurz had the title examined and was advised that the use of the property was restricted to "residence purposes only," he proceeded to operate a commercial garage, where he dismantled, wrecked, and repaired motor vehicles. Plaintiffs, after being unsuccessful in securing any relief through the city authorities, filed their bill of complaint and obtained a temporary injunction restraining Kurz from violating the building restrictions.

When the case was tried, those plaintiffs who testified stated that Netzel did not use the rear of his lot in a manner that was either offensive or disturbing to them, but that the operations of Kurz were conducted with such noise and activity that some of them, at least, were unable to sleep. The trial judge summed up the testimony as follows:

"Immediately after the defendants herein acquired said lot No. 45 in April of 1943 as aforesaid he (Mr. Kurz) opened up a general automotive repair business in the structure on the rear of said lot. Since that day there have emanated from said structure all the usual noises and traffic that one might reasonably expect from a business of like nature. Specifically, testimony shows that a wrecker is running in and out of said place of business at various times of the night and day, wrecked cars are towed into said place of business, bumped out, repaired and rebuilt, entailing an amount of noise depending

upon the bumping or the effort entailed in connection with the restarting and adjustment of motors. The testimony in substance indicates that a street that previously had been an ordinary residential street has been changed into a sort of spasmodic proving ground for the defendant in connection with the starting and testing of cars being repaired. The spotlight used to light the entrance to said garage is apparently used at varying times of the night and often late at night which spotlight not only lights up the rear of the defendants' lot but the adjacent backyards.''

Kurz's principal defense was that of estoppel and laches. The trial judge held, however, that plaintiffs had proceeded promptly, had not waived any of their covenant rights, and were entitled to relief.

Defendants appeal from a decree in which they are perpetually restrained and enjoined from using lot 45 for any other than residence purposes. The following observation in *Boston-Edison Protective Ass'n* v. *Goodlove,* 248 Mich. 625, 629, is applicable to the situation thus disclosed.

''While it is true that there has been no objection made to the defendant's practicing medicine at his home and using it as a doctor's office where patients consulted him, nevertheless, the defendant should not be able to violate further rights of plaintiffs on account of his theretofore slight breach of the restrictive covenants in his deed. Plaintiffs are not estopped from preventing a most flagrant violation of the restrictions on account of their theretofore failure to stop a slight deviation from the strict letter of such restrictions.''

This rule was followed in *Pink* v. *Elder,* 299 Mich. 320, the headnote of which reads:

''While lot owners in restricted subdivision, by failing to object to physician's practicing medicine in his home, may be estopped from enjoining con-

tinuance of such practice, they are not thereby estopped from enjoining erection on lot of one-story office building which does not conform to restrictions or subdivision.''

As stated in *Polk Manor Co.* v. *Manton,* 274 Mich. 539, although building restriction cases differ in their facts and, in the main, each must be determined on its own particular facts, plaintiffs are entitled to relief even though there may have been some relaxation, so long as there still remains something of substantial value to those entitled to enforce it insofar as they are not affected by the principles of estoppel or waiver. See, also, *Voorheis* v. *Powell,* 261 Mich. 378 (85 A. L. R. 932), and *Boston-Edison Protective Ass'n* v. *Allen,* 293 Mich. 668.

The testimony in this case, in the light of the surrounding circumstances, fails to establish waiver, laches, or estoppel.

The decree of the trial court is affirmed, with costs to appellees.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.