MARKMAN, J.
We granted leave to appeal to consider: (1) whether the use of a park as a “dog park” violates a deed restriction limiting use of the land to “residential purposes only”; and (2) whether a plaintiff has waived the ability to challenge a violation of a deed restriction when the plaintiff has failed to challenge less serious violations of the deed restriction in the past. We affirm the judgment of the Court of Appeals that use of land for a “dog park” violates a deed restriction limiting use of the land to “residential purposes only.” Moreover, we also affirm the judgment of the Court of Appeals that a plaintiff may contest a “more serious” violation of a deed restriction, even if such plaintiff has not contested less serious violations of the deed restriction in the past. Accordingly, we remand this case to the trial court for the entry of an order of summary disposition in favor of plaintiff, and for a determination of the appropriate remedy.
I. STATEMENT OF FACTS
In 1915, the Bloomfield Estates Company recorded deed restrictions on lots in the Bloomfield Estates *209 subdivision. Among the lots on which the deed restrictions were imposed was Lot 52, which is the lot at issue in this case. Around 1928, Bloomfield Township purchased Lot 52 and other restricted subdivision lots pursuant to a plan to create a park. In 1929, a complaint was filed by the Bloomfield Township Board of Trustees to remove these deed restrictions, but the complaint was later voluntarily dismissed. In 1938, defendant city of Birmingham was deeded the restricted lots being used as a park, including Lot 52. The quitclaim deeds were “subject to the building and use restrictions of record.” This land was incorporated into Springdale Park, a 55-acre park administered by defendant city. Only a portion of Springdale Park is burdened by the deed restriction at issue in this case. In 1941, plaintiff association was formed to enforce the deed restrictions on behalf of landowners in the Bloomfield Estates subdivision. The Bloomfield Estates Company quit-claimed its remaining rights to plaintiff in 1955.
Springdale Park has been used over the years for a variety of park-related activities, including those that might be characterized as involving unusual amounts of noise. For example, the park has been used for dances, Girl Scout camping, and baseball games. However, the Girl Scout camping and the dances did not occur on land burdened by the deed restrictions. Although baseball games took place on lots burdened by the deed restrictions in 1947, plaintiff requested that defendant cease allowing baseball games on these lots. Defendant responded by stating that “restrictions will be placed on the use of the park,” and “it is not our intent to use Lots 57 and 58 for baseball games.” Another 1947 letter challenged a building on Lot 42 that violated the deed restrictions, and defendant responded by stating that it would remove the building. In 1951, plaintiff again challenged the use of restricted lots for baseball games *210 and the presence of a maintenance building on a restricted lot. Defendant responded by noting that baseball had not been played on the property for 12 months, and that defendant would “remove this [maintenance] building from this lot.” Although plaintiff has challenged violations of the deed restrictions occurring on restricted lots of the park, plaintiff has never challenged the use of the lots as a park.
In 2003, plaintiff became aware that defendant planned to use Lot 52 of Springdale Park as a “dog park,” a fenced area within which dogs could roam unleashed. Plaintiff alerted defendant that plaintiff would enforce its rights under the deed restriction if the dog park was built. In 2004, defendant built the dog park. At the time the dog park was erected, dogs were not allowed in Springdale Park, and signs indicated that dogs were prohibited. Plaintiff filed suit against defendant, seeking enforcement of the deed restriction and injunctive relief against use of Lot 52 as a dog park. Plaintiff also asked the trial court to order defendant to tear down the fence.
Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff had waived its right to enforce the deed restriction, and that the use of Lot 52 as a dog park did not violate the deed restriction. The trial court granted summary disposition to defendant. The trial court ruled that plaintiff had not waived its right to enforce the deed restriction through acquiescence; however, the trial court also concluded that the deed restriction was not violated, because the use of Lot 52 as a dog park constituted a “residential” use.
Plaintiff appealed to the Court of Appeals, and the Court of Appeals reversed in a split decision. Unpublished opinion per curiam of the Court of Appeals, issued March 14, 2006 (Docket No. 255340). The Court *211 of Appeals determined that “reference to dictionary definitions shows that the restriction did not contemplate using the property as a park.” Id., slip op at 3. Consequently, “[u]se of Lot 52 as part of a municipal park violates the deed restriction irrespective of whether part of it is fenced off as a dog park.” Id. Because the lots had been used as a park for 75 years, “equity will no longer permit plaintiff to seek enforcement of the deed restriction against that use.” Id., slip op at 4. However, plaintiff could “challenge more serious or more extensive violations.” Id., citing Boston-Edison Protective Ass’n v Goodlove, 248 Mich 625, 629-630; 227 NW 772 (1929). Because the dog park constituted a “more serious violation of the deed restrictions,” plaintiff could challenge that use. Id. Consequently, the Court of Appeals found that the trial court erred in granting summary disposition for defendant. The Court of Appeals reversed the trial court and remanded for the entry of an order of summary disposition in favor of plaintiff. It also remanded for the trial court to determine if an injunction was warranted under these circumstances.
The dissenting judge would have held that plaintiff could not object to the use of Lot 52 as a dog park, because “common sense would ... suggest that while [Lot 52] has been a park for the past seventy-five years, people have brought their dogs to this park.” Id., slip op at 2. For that reason, the use of Lot 52 as a dog park did not constitute a “ ‘more serious violation of the deed restrictions.’ ” Id. We granted defendant’s application for leave to appeal. 477 Mich 958 (2006).
II. STANDARD OF REVIEW
We review de novo the grant or denial of a motion for summary disposition. Saffian v Simmons, 477 Mich 8, *212 12; 727 NW2d 132 (2007). The scope of a deed restriction is a question of law that is reviewed de novo. Terrien v Zwit, 467 Mich 56, 60-61; 648 NW2d 602 (2002).
III. ANALYSIS
A. VIOLATION OF DEED RESTRICTION
A deed restriction represents a contract between the buyer and the seller of property. Uday v City of Dearborn, 356 Mich 542, 546; 96 NW2d 775 (1959). “Under-girding this right to restrict uses of property is, of course, the central vehicle for that restriction: the freedom of contract, which is . .. deeply entrenched in the common law of Michigan.” Terrien, supra at 71 n 19, citing McMillan v Mich S & N I R Co, 16 Mich 79 (1867). The United States Supreme Court has listed the “right to make and enforce contracts” among “those fundamental rights which are the essence of civil freedom.” United States v Stanley, 109 US 3, 22; 3 S Ct 18; 27 L Ed 835 (1883). We “respect[] the freedom of individuals freely to arrange their affairs via contract” by upholding the “fundamental tenet of our jurisprudence ... that unambiguous contracts are not open to judicial construction and must be enforced as written,” unless a contractual provision “would violate law or public policy.” Rory v Continental Ins Co, 473 Mich 457, 468, 470; 703 NW2d 23 (2005) (emphasis in original). As one court has stated:
Courts do not make contracts for parties. Parties have great freedom to choose to contract with each other, to choose not to do so, or to choose an intermediate course that binds them in some ways and leaves each free in other ways. [Rarities Group, Inc v Karp, 98 F Supp 2d 96, 106 (D Mass, 2000).]
*213 “ ‘Were courts free to refuse to enforce contracts as written on the basis of their own conceptions of the public good, the parties to contracts would be left to guess at the content of their bargains Fed Deposit Ins Corp v Aetna Cas & Surety Co, 903 F2d 1073, 1077 (CA 6, 1990), quoting St Paul Mercury Ins Co v Duke Univ, 849 F2d 133, 135 (CA 4,1988). Because the parties have freely set forth their rights and obligations toward each other in their contract, when resolving a contractual dispute, “society is not motivated to do what is fair or just in some abstract sense, but rather seeks to divine and enforce the justifiable expectations of the parties as determined from the language of their contract.” Rich Products Corp v Kemutec, Inc, 66 F Supp 2d 937, 968 (ED Wis, 1999). Rather than attempt to apply an abstract notion of “justice” to each particular case arising out of a contract, we recognize that refusal to enforce a contract is “contrary to the real justice as between [the parties].” Mitchell v Smith, 1 Binn 110, 121 (Pa, 1804). See also Brown v Vandergrift, 80 Pa 142, 148 (1875) (holding that enforcing a contract is “essential to do justice”). Consequently, when parties have freely established their mutual rights and obligations through the formation of unambiguous contracts, the law requires this Court to enforce the terms and conditions contained in such contracts, if the contract is not “contrary to public policy.”[1] Sands Appliance Services, Inc v Wilson, 463 Mich 231, 239; 615 NW2d 241 (2000). When contracts are formed, the parties to the contract are the lawmakers in such realm and deference must be shown to their judgments and to their language as with regard to any other lawmaker.
*214 Because of this Court’s regard for parties’ freedom to contract, we have consistently “supported] the right of property owners to create and enforce covenants affecting their own property.” Terrien, supra at 71. Such deed restrictions “ ‘generally constitute a property right of distinct worth.’ ” Rofe v Robinson, 415 Mich 345, 350; 329 NW2d 704 (1982), quoting Cooper v Kovan, 349 Mich 520, 531; 84 NW2d 859 (1957). Deed restrictions “ ‘preserve not only monetary value, but aesthetic characteristics considered to be essential constituents of a family environment.’ ” Rofe v Robinson (On Second Remand), 126 Mich App 151, 157; 336 NW2d 778 (1983), quoting Bellarmine Hills Ass’n v Residential Systems Co, 84 Mich App 554, 559; 269 NW2d 673 (1978). If a deed restriction is unambiguous, we will enforce that deed restriction as written unless the restriction contravenes law or public policy, or has been waived by acquiescence to prior violations, because enforcement of such restrictions grants the people of Michigan the freedom “freely to arrange their affairs” by the formation of contracts to determine the use of land. Rory, supra at 468. Such contracts allow the parties to preserve desired “aesthetic” or other characteristics in a neighborhood, which the parties may consider valuable for raising a family, conserving monetary value, or other reasons particular to the parties. The deed restriction at issue here states:
Each lot or lots shall be used for strictly residential purposes only, and no buildings except a single dwelling house and the necessary out-buildings shall be erected or moved upon any lot or lots except that Lot 1 may be used for four dwelling houses and the necessary out-buildings, and that three houses may be erected on Lots 40 and 41. [Emphasis added.]
*215 At issue then is the meaning of the phrase “strictly residential purposes only.” Although the deed restriction does not define “residential,” where a term is not defined in a contract, “we will interpret such term in accordance with its ‘commonlyused meaning.’” Terrien, supra at 76-77, quoting Henderson v State Farm Fire & Cas Co, 460 Mich 348, 354; 596 NW2d 190 (1999). Moreover, under the doctrine of noscitur a sociis, “ ‘a word or phrase is given meaning by its context or setting.’ ” Koontz v Ameritech Services, Inc, 466 Mich 304, 318; 645 NW2d 34 (2002), quoting Brown v Genesee Co Bd of Comm’rs (After Remand), 464 Mich 430, 437; 628 NW2d 471 (2001).
The deed restriction limits the use of restricted land to “strictly residential purposes only.” The term “residential” means “pertaining to residence or to residences.” Random House Webster’s College Dictionary (1997). “Residence” means “the place, especially] the house, in which a person lives or resides; dwelling place; home.” Id. The term “residential” in the deed restriction thus refers to homes where people reside. By using the terms “strictly” and “only,” the deed restriction seeks to underscore or emphasize that restricted land may only be used for this purpose.
This conclusion is bolstered by the remaining language in the deed restriction, which states that “no buildings except a single dwelling house and the necessary out-buildings shall be erected or moved upon any lot or lots.” This language indicates that when the deed restriction refers to “residential purposes,” the intended use is as a “single dwelling house” and immediately related purposes. The only exceptions listed— “that Lot 1 may be used for four dwelling houses and the necessary out-buildings, and that three houses may be erected on Lots 40 and 41” — further clarify that the *216 term “residential” refers to a “single dwelling house.” Neither of the two listed exceptions allows for use of Lot 52 as a park. Therefore, the phrase “strictly residential purposes only” precludes use of Lot 52 as a park and such use violated the deed restriction.
Because use of the restricted land as a park violated the deed restriction, the use of Lot 52 as a dog park violated the deed restriction as well. Our prior holdings support this conclusion. Cf. Wood v Blancke, 304 Mich 283, 288-289; 8 NW2d 67 (1943) (The raising of 40 carrier pigeons for private use did not constitute use for “residence purposes.”). Defendant argues that the deed should be construed to allow a broad range of activity to be considered “residential.” Although our courts have noted that “[a] restriction allowing residential uses permits a wider variety of uses than a restriction prohibiting commercial or business uses,” Beverly Island Ass’n v Zinger, 113 Mich App 322, 326; 317 NW2d 611 (1982), those cases have concerned a landowner who was using his or her home for business purposes in addition to residential use. In Beverly, the Court of Appeals permitted a homeowner to run a small day care facility from her home because this use was indistinguishable from the use resulting if the homeowner “simply ha[d] a large family.”[2] Id. at 328. In Miller v Ettinger, 235 Mich 527; 209 NW 568 (1926), we allowed a landowner burdened by a restriction that the land be used “solely for residence purposes” to build an apartment building on the land. Here, Lot 52 is being used as a park, and prospectively as a dog park. Neither of these uses involves the use of Lot 52 as a dwelling place, and consequently these uses do not conform to the deed restriction.
*217 Defendant further argues that using the land to allow dogs to roam constitutes a “residential” use because homeowners may allow dogs to wander in their own backyards under “residential purposes only” restrictions. However, the instant case is distinguishable from the backyard scenario. Most importantly, a backyard is attached to a home, and hence fits within the actual meaning of the term “residential.” That is, a backyard is an extension of a residence. A dog park is not attached to a home, and hence does not accord with the meaning of the term “residential.” Moreover, a dog park lacks two characteristics of a backyard, which suggests that a dog park is not included within the commonly understood meaning of “residential” use. First, because a backyard is attached to a home, the master exercises some level of control over the backyard. Here, no one person controls the dog park. Second, the dog park may permit use by a great multitude of dogs at one time, while a backyard generally contains at most a few dogs.[3] These characteristics sufficiently distinguish a dog park from the meaning normally ascribed to “residential” use, thereby indicating that the dog park violates the deed restriction limiting Lot 52 to “residential” use.[4]
*218 Thus, use of Lot 52 as both a park and a dog park violates the deed restriction, which limits the use of the land to “residential purposes only.”
B. CONTESTING USE OF LOT 52
Defendant argues that, even if the deed restriction was violated by use of Lot 52 as a dog park, plaintiff cannot enforce the deed restriction in light of its acquiescence to prior violations of the deed restriction. That is, defendant contends that the deed restriction was effectively waived.
With regard to whether a restriction has been waived, we likewise have said that “whether or not there has been a waiver of a restrictive covenant or whether those seeking to enforce the same are guilty of laches are questions to be determined on the facts of each case as presented.” [Id., quoting Grandmont Improvement Ass’n v Liquor Control Comm, 294 Mich 541, 544; 293 NW 744 (1940).]
We have found that waiver did not occur if a plaintiff “promptly filed” suit “[w]hen it became apparent to plaintiff that the owner of [a restricted lot] was about to use it for commercial purposes [in violation of a deed restriction].” Baerlin v Gulf Refining Co, 356 Mich 532, 536; 96 NW2d 806 (1959). Defendant asserts that plaintiffs failure to “promptly file” suit to preclude the use of Lot 52 as a park effectively waived plaintiffs ability to contest the use of Lot 52 as a dog park.
Plaintiff argues, however, that though it has never contested the use of Lot 52 as a park, it may still contest the proposed use of Lot 52 as a dog park. In Jeffery v Lathrup, 363 Mich 15; 108 NW2d 827 (1961), we stated *219 the general rule that if a plaintiff has not challenged previous violations of a deed restriction, the restriction “does not thereby become void and unenforceable when a violation of a more serious and damaging degree occurs.” Id. at 22 (emphasis added). See also Sheridan v Kurz, 314 Mich 10, 13; 22 NW2d 52 (1946); Cherry v Bd of Home Missions of Reformed Church in United States, 254 Mich 496, 504; 236 NW 841 (1931); Goodlove, supra at 629 (“Plaintiffs are not estopped from preventing a most flagrant violation of the restrictions on account of their theretofore failure to stop a slight deviation from the strict letter of such restrictions.”). When determining whether prior acquiescence to a violation of a deed restriction prevents a plaintiff from contesting the current violation, we compare the character of the prior violation and the present violation. Only if the present violation constitutes a “more serious” violation of the deed restriction may a plaintiff contest the violation despite the plaintiffs acquiescence to prior violations of a less serious character. In general, a “more serious” violation occurs when a particular use of property constitutes a more substantial departure from what is contemplated or allowable under a deed when compared to a previous violation. See, e.g., Sheridan, supra (holding that a more serious violation occurred when noise caused by a later violation represented a dramatic increase from noise caused by an earlier violation). That is, use that constitutes a “more serious” violation imposes a greater burden on the holder of a deed restriction than the burden imposed by a previous violation. Although determining whether a “more serious” violation occurred will hinge on the facts of a particular case, some relevant factors that may be considered include: (1) whether the later violation involved the erection of a structure where no such struc *220 ture had previously been permitted;[5] (2) whether the later violation constituted a more extensive violation of restrictions on the size or extent of a building;[6] (3) whether the later violation increased the use of land from a sporadic violation of the restriction to a continuous violation;[7] (4) whether the later violation significantly increased the noise or pollutant level on restricted land;[8] (5) whether the later violation increased the level of traffic occasioned by the prior violation;[9] (6) whether the later violation permitted an action that had been previously prohibited; and (7) whether the later violation altered in some material respect the character of the use of the restricted property.[10]
The dog park constitutes a “more serious” violation of the deed restriction than the previous uses of Lot 52. First, the dog park includes a permanent structure — an enclosed, fenced area — on Lot 52. Before the dog park, no such structures existed on the restricted lots. Second, the dog park will create continuous and systematic use of Lot 52, whereas previously the use of the restricted lots was irregular and sporadic. Third, the dog park will affirmatively encourage people to bring their dogs to Lot 52. Before Lot 52 was used as a dog park, dogs were prohibited from the park by posted “No *221 Dogs” signs. Hence, an activity that was once expressly prohibited is now sanctioned and encouraged by the creation of the dog park. Fourth, by encouraging more regular use of Lot 52, the dog park will generate more traffic in the surrounding neighborhoods than the previously irregular and sporadic use of the restricted lots. In summation, use of Lot 52 as a dog park effectively transforms the property from a vacant park to something akin to a public kennel. Consequently, this use constitutes a “more serious” violation of the deed restriction than the previous use as an open section of Springdale Park.
Because plaintiff has previously objected to “more serious” violations of the deed restrictions that also raised similar concerns of noise and the erection of permanent structures on restricted land, plaintiff has not, in our judgment, waived its ability to contest this “more serious” violation.
Defendant raises several arguments in opposition to the application of this rule. It argues that the park had previously been subject to noisy uses, and thus plaintiff acquiesced to noisy uses of the park, pointing to the park’s previous use for overnight Girl Scout camping, large dances, and baseball on permanent baseball diamonds. However, these uses occurred in sections of the park that were unburdened by the relevant deed restrictions.[11] Defendant would thus require plaintiff to object to “violations” of the deed restriction that occurred on unrestricted land, i.e., land uses that simply did not violate deed restrictions. However, plaintiff would have no authority or basis on which to object to violations of deed restrictions that did not apply to the land on which *222 the “violations” occurred. We have never imposed such an obligation on the holders of a restricted deed. See, e.g., Brideau v Grissom, 369 Mich 661, 667; 120 NW2d 829 (1963) (allowing the plaintiff property owners to enforce a deed restriction on adjacent property even though the plaintiffs had not objected to similar violations that occurred several blocks away).[12]
Defendant also argues that allowing plaintiff to contest the dog park after acquiescing to the park itself will permit those with the right to enforce deed restrictions to “pick and choose” which violations will be tolerated. However, allowing a plaintiff to enforce a deed restriction against a “more serious” violation does not grant that plaintiff an unlimited right to “pick and choose” which violations to allow and which violations to contest. A plaintiff can only contest “more serious” violations of the relevant deed restriction. Therefore, a plaintiff who acquiesces to one violation is thereafter prevented from contesting violations of an equivalent nature. However, a plaintiff who acquiesces to a seemingly innocuous violation would not forever be prevented from challenging more serious violations.
*223 Defendant essentially proposes a rule that would require those with the right to enforce deed restrictions to challenge every arguable violation of the deed restrictions, even minor technical violations, in order to ensure that the deed restrictions retain their effect. A plaintiff “should not be impelled to engage in overzealous covenant enforcement fearing possible waiver of future enforcement rights.” 2 Restatement Property, 3d, Servitudes, § 8.3, comment f, p 502. In this case, defendant’s proposed rule would prevent plaintiff from challenging the use of Lot 52 for a zoo, a waterpark, or a motocross track. Adopting defendant’s rule would create increasing chaos in the enforcement of deed restrictions.
TV. RESPONSE TO THE DISSENT
The dissent first concludes that the dog park constitutes a “residential” use under the terms of the deed restriction. To reach this conclusion, instead of simply examining the language that the parties themselves employed, the dissent defines the terms in the deed restriction by considering how other states have construed altogether different deed restrictions.[13] This in *224 terpretative technique fails for two reasons. First, the intent of the parties is properly determined from the words used by the parties themselves, not from the decisions of foreign (or even Michigan) courts addressing different deeds containing different language. Second,, the majority of the cases cited by the dissent involve deed restrictions that merely limit the use of property to “residential purposes,” and hence are readily distinguishable.[14] Furthermore, Baker v Smith, 242 Iowa 606; 47 NW2d 810 (1951), merely held that a restriction limiting use to a “dwelling place” did not preclude use as an apartment building. The instant case obviously does not involve the use of Lot 52 as a residence in any form. See also Isbrandtsen v North Branch Corp, 150 Vt 575; 556 A2d 81 (1988) (restriction limiting use to “single-family residence purposes only” did not preclude an owner from inviting guests to spend the night).
After arguing that the dog park is a “residential” use, the dissent further concludes that, even if the dog park is not “residential,” it does not constitute a “more serious” violation of the deed restriction. The dissent principally relies on Cherry to conclude that a “more serious” violation did not occur because a “dog park is of the same nature as a park.” Post at 238. However, *225 Cherry addressed whether a plaintiff could contest the defendant’s erection of a new church on restricted land after the plaintiff had allowed the defendant to continuously operate a church building on the same property for several years. We held that the plaintiff could not contest the new church building because “a church is a church,” and the plaintiff had previously acquiesced to the prior church building. Cherry, supra at 501. Unlike the church in Cherry, the use of Lot 52 as a dog park differs considerably from its previous use as a vacant park.
In rejecting our determination that the dog park constitutes a “more serious” violation, the dissent criticizes this opinion by arguing that “there are no court findings” in support of our conclusion that the dog park constitutes a “more serious” violation. Post at 239. However, no “court findings” are necessary. When a city affirmatively encourages the use of a park for a purpose that previously has been prohibited,[15] the record supports the conclusion that a “more serious” violation is shown because some number of people will, in fact, use the park for that purpose.[16]
*226 The dissent further criticizes this opinion by stating that a new structure has not been permitted on Lot 52 because, before the dog park, “it appears that three sides of the lot were already fenced.” Post at 240. However, even accepting this fact, the dissent ignores the fact that the building of the dog park required still another fence to be built, which then fully enclosed the area. Before the dog park, no such enclosure existed. Moreover, the dissent completely disregards the other factors that suggest that the dog park constitutes a “more serious” violation.
In conclusion, the dissent’s argument that the parties intended to include a dog park within the ambit of “residential” use erroneously relies on foreign precedent rather than on the actual language used by the parties to the deed restriction. Moreover, although the dissent relies on Cherry to support its claim that a “more serious” violation did not occur here, Cherry does not support its argument because, unlike the instant case, the prior use in Cherry was indistinguishable from the use objected to. Further, the dissent’s arguments that the dog park is not a “more serious” violation of the deed restriction fail to demonstrate that we have improperly applied the relevant factors in this case.[17]
V CONCLUSION
We affirm the Court of Appeals holding that the use of Lot 52 both as a park and as a dog park violates the *227 deed restriction that limits the use of Lot 52 to “strictly residential purposes only.” We further affirm the Court of Appeals conclusion that plaintiff may enforce the deed restriction despite plaintiffs failure to contest the use of Lot 52 as a park, because the use of Lot 52 as a dog park constitutes a “more serious” violation of the deed restriction. We remand this case to the trial court for the entry of an order of summary disposition in favor of plaintiff, and for a determination of the appropriate remedy.
Taylor, C.J., and Corrigan and Young, JJ., concurred with MARKMAN, J.
CAVANAGH, J. I concur in the result only.

 Defendant has not attempted to show that the deed restriction violated public policy; indeed, we have consistently supported the right of property owners to form deed restrictions. See Terrien, supra at 71.

 Cf. Terrien, supra at 60, which held that use of land as a day care center was not permitted under a deed restriction that prohibited use of the land “ ‘for any commercial, industrial, or business enterprises.’ ”

 Moreover, the number of dogs in a yard may be limited by local ordinance, while the dog park in this case had no limits on the number of dogs permitted.

 Defendant and the dissent argue that we should construe the deed restriction in light of the applicable zoning ordinances, citing Brown v Hojnacki, 270 Mich 557, 560-561; 259 NW 152 (1935). However, we later said that Brown confirmed the rule that “ambiguous restrictions may be interpreted in the light of a general plan.” Smith v First United Presbyterian Church, 333 Mich 1, 8; 52 NW2d 568 (1952) (emphasis added). Because the deed restriction in this case is not ambiguous, consideration of the zoning ordinances is not necessary. Defendant and the dissent further argue that the deed restriction should be construed in favor of the free use of property. See O’Connor v Resort Custom Builders, *218 Inc, 459 Mich 335, 341-342; 591 NW2d 216 (1999). However, this rule “should not be applied in such a way as to defeat the plain and obvious purposes of a contractual instrument or restriction.” Brown, supra at 560.

 See Goodlove, supra.

 See Kelman v Singer, 222 Mich 454; 192 NW 580 (1923).

 See Woughter v Van Marter, 281 Mich 408; 275 NW 236 (1937).

 See Sheridan, supra.

 Id.

 For example, if the later violation consisted of an “exclusively commercial” use of restricted land, such as a gas station, whereas prior violations consisted of commercial activity taking place within a residence, such as a home-based dressmaking or computer repair establishment, the later violation might well be determined to alter the character of the use of the restricted property. Polk Manor Co v Manton, 274 Mich 539, 541-543; 265 NW 457 (1936).

 As described earlier, plaintiff objected to use of the park for baseball games when those games occurred on lots burdened by the deed restrictions.

 Citing Goodlove, supra at 629, defendant further argues that the original violation must have been a “slight deviation” from the deed restriction, and that the use of Lot 52 as a park was not a “slight deviation.” But see contra Jeffery, supra at 22 (“Where the restriction has been violated in some degree, it does not thereby become void and unenforceable when a violation of a more serious and damaging degree occurs.”) (emphasis added); Cherry, supra at 504 (“[77o the extent plaintiffs had for a long time acquiesced in defendant’s violation of the restrictions they were estopped from asking injunctive relief. ”) (emphasis added). Moreover, the facts in Sheridan — in which the prior violation consisted of the owner’s operation of an engine repair business in a garage — could hardly be considered a “slight deviation” from a “residence purposes only” deed restriction. Hence, the touchstone of the rule regarding waiver is the disparity between the prior and the present violations, and not the initial existence of a “slight deviation.”

 The dissent offers two reasons for its rejection of our interpretation of the deed restriction. First, the dissent relies on the proposition that “restrictive covenants are to be strictly construed against the party seeking to enforce them and all doubts resolved in favor of the free use of property.” Post at 230. However, this rule is “ ‘applicable only as a last resort, when other techniques of interpretation and construction have not resolved the question of which of two or more possible reasonable meanings the court should choose.’ ” Klapp v United Ins Group Agency, Inc, 468 Mich 459, 472-473; 663 NW2d 447 (2003) (citation omitted). Second, the dissent asserts that the majority “reduces to a redundancy the language prohibiting buildings other than single dwelling houses,” post at 231, by concluding that the term “residential purposes only” in this particular deed refers to a “single dwelling house.” However, the dissent mischaracterizes this opinion. We first conclude that the term “residential” refers to a residence or a dwelling home. Only then, because *224 the deed restriction explicitly limits the use of Lot 52 to a “single dwelling house,” do we conclude that the deed restriction limits the use of Lot 52 to a “single dwelling house” and immediately related purposes. Hence, the dissent’s assertion that we make the term “single dwelling house” a “redundancy” is completely without basis.

 See Bagko Development Co v Damitz, 640 NE2d 67 (Ind App, 1994); Voedisch v Town of Wolfeboro, 136 NH 91; 612 A2d 902 (1992); Winn v Ridgewood Dev Co, 691 SW2d 832 (Tex App, 1985); Shermer v Haynes, 248 Ark 255; 451 SW2d 445 (1970). The dissent fails to acknowledge that the deed restriction in this case limits the use of Lot 52 to a “single dwelling house,” thereby making this case distinguishable from the cases cited.

 The dissent asserts that “the facts must be considered in the light most favorable to defendant,” post at 239 n 13, to support its contention that the facts in this case do not indicate that the dog park constitutes a “more serious” violation. When considering a motion for summary disposition under MCR 2.116(C)(10), a court should “draw[] all reasonable inferences in the nonmovant’s favor.” de Sanchez v Dep’t of Mental Health, 455 Mich 83, 89; 565 NW2d 358 (1997) (emphasis added). The dissent would apparently find that a reasonable inference may be drawn that fewer people will use Lot 52 after the erection of the dog park. However, because Lot 52 has been transformed from a vacant lot to a dog park, and defendant is actively encouraging the use of Lot 52 by dog owners after such use was previously prohibited, such an inference is not reasonable, in our judgment.

 The dissent claims that “we do not know whether dogs were prohibited from the park” or, if dogs were prohibited, “how long” such a prohibition existed. Post at 239 n 12. However, the record is clear that, before the introduction of the dog park, dogs were prohibited. Further, defendant failed to demonstrate that the prohibition was of recent origin, *226 acknowledging several times at oral argument that “we don’t know when the [‘No Dogs’] sign went up.” Even supposing that dogs were permitted in the park for some unknown period before their prohibition, the dissent simply ignores the difference between an occasional dog in the park and the regular and continuous use encouraged by a dog park.

 Although the dissent asserts that this decision will “increase lawsuits,” post at 241, we have applied this rule for at least 80 years without any appreciable flood of litigation.