# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 20, 2013

145988

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano,
Justices

MAJESTIC GOLF, L.L.C.,
        Plaintiff/Counter-Defendant/
        Appellee,

v

        SC: 145988
        COA: 300140
        Livingston CC: 09-024146-CZ

LAKE WALDEN COUNTRY CLUB, INC.,
        Defendant/Counter-Plaintiff/
        Appellant.

_____/

On order of the Court, leave to appeal having been granted, and the briefs and oral arguments of the parties having been considered by the Court, we REVERSE the July 10, 2012 judgment of the Court of Appeals, and REMAND this case to the Livingston Circuit Court for further proceedings not inconsistent with this order.

On October 7, 2008, Majestic Golf, LLC sent a letter to its tenant, Lake Walden Country Club, Inc. asking it to fulfill certain obligations under the parties' lease agreement within thirty days. Lake Walden did not do so. Majestic Golf contends that the letter constituted notice under ¶ 26 of the lease, pertaining to defaults, and that Lake Walden's failure to fulfill its obligations within thirty days constituted a default.

We conclude that there are genuine issues of material fact regarding whether Majestic Golf's October 7, 2008 letter constituted notice under ¶ 26 of the lease, in light of the parties' course of conduct surrounding the letter and the failure of the letter to identify itself as such. We further conclude that, if the letter was sufficient to provide such notice, there are genuine issues of material fact regarding whether Majestic Golf's subsequent conduct constituted a waiver of its claim of default based thereon. The Livingston Circuit Court erred in holding that, as a matter of law, Lake Walden was in breach of the lease agreement. The Court of Appeals similarly erred in affirming that holding. Accordingly, those portions of the panel's opinion relying on that holding are VACATED.

MARKMAN, J. (*dissenting*).

I respectfully dissent from this Court's order reversing the judgment of the Court of Appeals. Because I believe that the Court of Appeals correctly held that defendant's failure to consent to the road easement constituted a default entitling plaintiff to terminate the lease, I would affirm the judgment of the Court of Appeals.

The lease at issue here expressly provides, "Tenant shall permit drainage and utility easements and road crossings to be developed by Landlord on the Premises as required to permit development to occur on Landlord's Other Real Estate." The lease also states that the tenant's failure to perform any of the terms of the lease for "a period of thirty (30) days after notice thereof by Landlord to Tenant" shall constitute a default and that in the event of a default the "Landlord shall have the right to cancel and terminate this Lease . . . ."

Defendant (the tenant) failed to permit a road crossing to be developed by plaintiff (the landlord), as required by the lease. On October 7, 2008, plaintiff sent defendant a letter "request[ing] that [defendant] fulfill its obligation under the lease" by "execut[ing] the Consent portion of the enclosed Grant of Easement" and "return[ing] the enclosed Consent within thirty (30) days." The letter stated that "Section 22 of the golf course lease obligates [defendant] to permit road crossing easements," observed that defendant's consent had already been requested and "[d]espite the request, the written Consent has not been received," and stated that such consent is "urgently required." This letter clearly provided defendant with notice that plaintiff was demanding that defendant sign the consent within 30 days, as required by the lease. Although the letter does not expressly state that if defendant failed to sign the consent within 30 days, plaintiff was going to hold defendant in default and terminate the lease, plaintiff was nowhere required to state that in the notice.

Absent any explanation, the majority concludes that "there are genuine issues of material fact regarding whether [plaintiff's] October 7, 2008 letter constituted notice under ¶ 26 of the lease, in light of the parties' course of conduct surrounding the letter and the failure of the letter to identify itself as such." I presume the majority's reference to "the parties' course of conduct" refers to the fact that the parties were involved in merger negotiations at the time that the letter was delivered. However, there is no evidence that during these negotiations the parties in any way amended the lease, and therefore the lease continued to control. Because (a) as defendant conceded in its answer to plaintiff's complaint, the "granting of an easement by [defendant] [was] required by ¶ 22 of the Lease," (b) ¶ 26 of the lease required defendant to grant the easement within 30 days of the notice, and (c) it is undisputed that defendant did *not* grant the easement within 30 days of the notice, defendant as a matter of law breached the lease.

Furthermore, contrary to the majority's suggestion, there is nothing in ¶ 26, or anywhere else in the lease, that required plaintiff to label or designate its notice as comprising the notice required in ¶ 26. Instead, ¶ 26 simply provides that if defendant "fails to perform" and if that "non-performance shall continue for . . . a period of thirty (30) days after notice thereof," this "shall be a default . . . and a breach of the Lease." There is no question that plaintiff's letter constituted a notice of nonperformance, and was easily identifiable as such, and that defendant's nonperformance continued for a period of 30 days after notice. Therefore, there was a default and a breach of the lease.

Finally, the majority concludes that "there are genuine issues of material fact regarding whether [plaintiff's] subsequent conduct constituted a waiver of its claim of default . . . ." I presume by this reference the majority is referring to the October 8, 2008 e-mail from Mr. Crouse (plaintiff's manager) and his October 13, 2008 letter. I do not believe that either one of these communications somehow constituted a waiver of the default. Indeed, Mr. Crouse's October 8 e-mail clearly indicated that he was demanding that defendant sign the consent for the road easement and that it do so within 30 days. This e-mail stated:

> We . . . have previously asked for your concurrence, which has not be[en] provided as is required by Section 22 of the Lease. Failure to obtain [defendant's] concurrence was a major reason why we were not able to finalize a Master Plan for our property. Now we again request that [defendant] promptly fulfill its obligation under the lease.

Given this language, it cannot reasonably be argued that the e-mail waived the default. And the October 13 letter was simply silent with regards to the consent and thus cannot possibly be viewed as a waiver of the default.

This Court has repeatedly held that the straightforward language of a contract must control. *Terrien v Zwit*, 467 Mich 56, 71 (2002) ("'The general rule [of contracts] is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts.'") (citation omitted); *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 52 (2003) ("The notion, that free men and women may reach agreements regarding their affairs without government interference and that courts will enforce those agreements, is ancient and irrefutable."); *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 370 (2003) ("[T]he freedom to contract principle is served by requiring courts to enforce unambiguous contracts according to their terms . . . ."); *Rory v Continental Ins Co*, 473 Mich 457, 461 (2005) ("[A] court must construe and apply unambiguous contract provisions as written."); *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 212 (2007) ("We 'respect[] the freedom of individuals freely to arrange their affairs via contract' by upholding the 'fundamental tenet of our jurisprudence . . . that

unambiguous contracts are not open to judicial construction and must be enforced as written' . . . .") (citation and emphasis omitted) (alterations in the original).

The lease at issue here clearly required that (a) defendant sign the consent for the road easement, which it did not do, (b) plaintiff provide defendant with written notice of defendant's nonperformance, which it did do, and (c) defendant perform its contractual obligations within 30 days of plaintiff's notice, which it did not do. Equally clearly, the lease provides that (a) defendant's failure to perform within 30 days of the notice constitutes a default and (b) in the event of a default, plaintiff has the right to cancel and terminate the lease. Because the Court of Appeals correctly held that the contract means what it says, I would affirm its judgment.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 20, 2013



t1218

Clerk