*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CRAIG MURAWSKI,

        Plaintiff-Appellee,

v

CITY OF ESSEXVILLE,

        Defendant-Appellant.

UNPUBLISHED
January 22, 2019

No. 341857
Bay Circuit Court
LC No. 16-003714-CZ

Before: BOONSTRA, P.J., and SAWYER and TUKEL, JJ.

PER CURIAM.

Defendant, City of Essexville, appeals by right an order denying its motion for summary disposition pursuant to MCR 2.116(7) (governmental immunity). We affirm.

## I. FACTS

Plaintiff, Craig Murawski, filed suit after his home flooded with sewage. In his complaint against defendant, plaintiff stated that from 2007 to 2010, there were no problems with his home's sewage system other than gurgling noises. In 2010, sewage "began to back up sending rank and foul smelling waste water and toilet paper onto his [home's] basement floor in varying amounts and quantity." The home again flooded with sewage in 2012. After the incident in 2012, plaintiff employed the services of a sewage company, Dependable Sewer, to clean an obstruction in the home's interior sewer line. Plaintiff alleged that between 2012 and 2016, his home's sewage system would "periodically [back-up]," which led to flooding. In July 2016, "over. . . fifty (50) gallons of human waste and sewer water" flooded his home's master bedroom, the kitchen floor, and the floor of his son's bathroom.

After obtaining consultation from Dependable Sewer in 2016, plaintiff discovered that, "the sanitary sewer line was severed and/or cut and was not connected to any drain whatsoever." Plaintiff alleged that city employees severed the connection from his home's sewage line to defendant's sewage disposal system while performing work on defendant's drainage system in 2002. He averred that defendant was negligent in its failure to provide adequate and safe disposal of plaintiff's sewage, that defendant had a duty to do so, and that as a "proximate result" of defendant's negligence in not reconnecting his home's sewer line, he and his family were

required to unnecessarily vacate their home and spend money on alternate housing, food, other needs, and restoration and repair services. Plaintiff stated that he incurred additional monetary damages because he paid all sewer bills between 2007 and 2016 when, in fact, he had no working sewer service. The trial court denied defendant's motion for summary disposition and ruled that there existed a genuine issue of material fact as to whether defendant's employees caused a defect in the sewage disposal system, or whether the defect was in plaintiff's sewage service lead for which he was responsible.

## II. ANALYSIS

Defendant argues that there is no genuine issue of material fact regarding whether there was a defect in its sewage disposal system and that it is immune from plaintiff's suit. "We review de novo the grant or denial of a motion for summary disposition." *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 212; 737 NW2d 670 (2007). We find no error.

In determining whether summary disposition under MCR 2.116(C)(7) is appropriate, a court considers all documentary evidence submitted by the parties, accepting as true all the contents of the complaint unless affidavits or other appropriate documents specifically contradict them. *Patterson v Kleiman*, 447 Mich 429, 433-435; 526 NW2d 879 (1994). Summary disposition under MCR 2.116(C)(7) may be granted when "immunity granted by law" bars a claim. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

The Legislature promulgated MCL 691.1417(3), the statutory exception to governmental immunity at issue here, "[t]o afford property owners, individuals, and governmental agencies greater efficiency, certainty, and consistency in the provision of relief for damages or physical injuries caused by a sewage disposal system event." MCL 691.1417(1). "Sewage disposal system event" means "the overflow or backup of a sewage disposal system onto real property." MCL 691.1416(k). Under MCL 691.1417(3), if a plaintiff believes that a sewage disposal system event caused property damage or physical injury, the plaintiff may seek compensation from a governmental agency if it can be shown that the following existed at the time of the event:

(a) The governmental agency was an appropriate governmental agency.

(b) The sewage disposal system[1] had a defect.

---

[1] " 'Sewage disposal system' means all interceptor sewers, storm sewers, sanitary sewers, combined sanitary and storm sewers, sewage treatment plants, and all other plants, works, instrumentalities, and properties used or useful in connection with the collection, treatment, and disposal of sewage and industrial wastes, and includes a storm water drain system under the jurisdiction and control of a governmental agency." MCL 691.1416(j).

(c) The governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect.

(d) The governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect.

(e) The defect was a substantial proximate cause of the event and the property damage or physical injury. [MCL 691.1417(3)(a)-(e).]

If a plaintiff fails to make the showings outlined above,[2] the defendant is immune from suit. MCL 691.1417(2).

Before the trial court, defendant disputed plaintiff's version of the facts underlying the alleged defect in its sewage disposal system, and argued that the defect occurred in a "service lead" from plaintiff's home, for which defendant was not responsible. In support of its argument, defendant relied on an affidavit and letter from its City Manager, Daniel J. Hansford, who explained that "the backup of July 2016 was caused by problems that existed in the sewer [service] lead from the house to the City sewer, and not in defendant's sewer." Hansford claimed that an inspection of plaintiff's property revealed that "the sewer lead leading to defendant sewer was clogged with tree roots." In an earlier letter, Hansford explained that he believed the 2002 work on plaintiff's home's sewer connection was performed correctly by city employees, implying that the sewage lead from plaintiff's home was correctly attached to defendant's sewage system. He opined that plaintiff's home's sewage issues were actually caused by work performed by a contractor employed by the previous owner of plaintiff's home. Hansford suggested that the contractor in question "illegally" installed a sewer connection from plaintiff's home to an "abandoned" sewer line.

As noted above, plaintiff argued that in performing work on defendant's drainage system in 2002, defendant's employees severed and then failed to reconnect his home's service lead back to defendant's sewage disposal system, thereby causing a "defect." Plaintiff relied upon the opinion of Terry Levasseur, who worked in residential construction, primarily performing excavating and foundation services involving the repair, removal and installation of sanitary sewer lines. He was familiar with plaintiff's property and was present in the aftermath of the 2016 sewage event. Levasseur attested that in approximately 2002, "there was absolutely no question that the severed sewer line running from [plaintiff's] home to the curb was the only sanitary sewer line for his residence." Moreover, Richard Cannel, an engineer who worked on sewage and storm systems for the City of Saginaw, attested that he was familiar with the situation at plaintiff's home and that in 2002 "a storm sewer was constructed . . . at which time the house sanitary sewer connection to [plaintiff's home] was severed." Cannel stated that "back in 2002, more investigation should have taken place to determine [whether] the severed sewer connection was functioning, which it was, and then it should have been reconnected to the

---

[2] Defendant concedes that it was the appropriate governmental agency with respect to plaintiff's claim.

-3-

sanitary sewer, [and] not abandoned." Levasseur stated that upon alerting defendant to the issue in 2016, city employees discovered that the "city's sewer line for [plaintiff's home] was actually hooked into his foundation drain tile and not into his sanitary sewer line." According to Levasseur, upon this discovery Hansford purportedly "attempted to explain that the [city's sewage line] hookup was correct" until Levasseur explained to him that the "foundation tile was not a sanitary sewer line because it ran clearly under the foundation of [plaintiff's] home connected to the sump pump for the sole purpose of discharging gray water," and "that at that time, Mr. Hansford admitted that there was an issue and stated publicly that '[defendant] screwed up.' "

As a preliminary matter, "sewage disposal system" includes the "instrumentalities, and properties used or useful in connection with the collection, treatment, and disposal of sewage." MCL 691.1416(j). We conclude that plaintiff's allegation that city employees failed to connect his home's service lead back to the sewage disposal system would qualify as a defect in the sewage disposal system because the sewage disposal system includes the instrumentalities used in connection with the collection and disposal of sewage. *Id*. Plaintiff's allegation differs from defendant's contention that the defect occurred within plaintiff's "service lead" because plaintiff's allegation involves the service lead's actual connection to the sewage disposal system, and not the service lead itself. If this was not a disputed fact, plaintiff would be foreclosed from recovery because the defect would not be in defendant's "sewage disposal system." MCL 691.1417(3)(b). However, accepting all allegations in the complaint with regard to the defect as true, in addition to Levasseur's and Cannel's opinions about the cause of the defect, and contrasting them with Hansford's opinion about the non-existence of a defect in the sewage disposal system, we conclude that there is a genuine issue of material fact regarding whether defendant's sewage disposal system had a defect.

Defendant also argued that under MCL 691.1417(3)(c), because there was no defect in the sewage disposal system, it would have been impossible for defendant to know about said non-existent defect, and it could not be said that in the exercise of reasonable diligence defendant should have known. In support of its position, defendant relied upon Hansford's statement that "[t]here was no way that [defendant] could have been aware of a defect from the sewer line that flowed in front of [plaintiff's home], because there was no defect." In contrast, plaintiff alleged that defendant knew or should have known through reasonable diligence that there was a defect, i.e., that plaintiff's home's sewage lead was severed by city employees in 2002 and was never reconnected. Cannel attested that had city employees been diligent in their inspection of the sewage disposal system after severing plaintiff's sewage lead, they would have discovered the defect in the system. Furthermore, Cannel stated that "[i]t is standard procedure that city records would indicate the date of the connection with the location and depth of the sewer connection at the property (R/W) line." Thus, there was evidence that after defendant's employees allegedly severed the sewage lead connection, defendant's records should have reflected that the line was not reconnected. Accordingly, one could infer that city employees, in a reasonably diligent review of their own records, would have known of the defect in defendant's sewage disposal system. There remains an open issue upon which reasonable minds might differ. *West*, 469 Mich at 18.

Defendant argued that under MCL 691.1417(3)(d), there was no defect in the sewage disposal system and no need to take steps to repair, correct, or remedy a non-existent defect.

-4-

Defendant also argued that even if there had been a defect for which the city would have been responsible, it repaired plaintiff's sewage system on the day of the 2016 incident. Hansford indicated that defendant's insurer paid for "costs that were asked for and received including the costs of excavation, plumbing materials, sand and stone, concrete driveway replacement and the complete restoration of any damage done from the sewer backups." However, plaintiff, relying on the statements of Cannel and Levasseur about defendant's knowledge of the defect and its failure to reconnect the sewage lead to the disposal system, asserted that because defendant knew of the defect in 2002, its repairs in 2016 were not a reasonable step in a reasonable amount of time to repair, correct, or remedy the defect.

We conclude that the focus should be on when the defect occurred as opposed to when the governmental agency became aware of the defect, since subsection (c) focuses on the governmental agency's knowing, "or in the exercise of reasonable diligence should have known, about the defect." Here, defendant may have taken reasonable steps within a reasonable amount of time of actually knowing of the defect, but a question remains regarding whether it did so within a reasonable amount of time from when they should have known. Thus, the contradictory factual accounts qualify as a genuine issue of material fact.

Defendant also argued that because there was no defect in its sewage disposal system, the alleged defect could not have been the substantial proximate cause of the damage to plaintiff's home under MCL 691.1417(3)(e). Defendant relies on Hansford's statement that the backup was caused by a clogged sewage lead on plaintiff's land, rather than a defect in the city's sewage disposal system, and that the damages plaintiff suffered were not proximately caused by a defect in the city's system. Plaintiff stated that because of the actions and omissions of defendant's employees in severing and then failing to reconnect his home's sewer line to the sewage disposal system, he and his family were required to unnecessarily vacate their home, and spend money on alternative housing, food, restoration and repair services, and other needs. Levasseur attested that he was personally aware of the backups at plaintiff's home over the years, and in 2016, dug and found that the sewer lead line of plaintiff's home was disconnected from defendant's sewage disposal system at a point near the street, that this defect was the cause of the backups, and that he personally witnessed the damage caused by the 2016 backup. The aforementioned allegations and statements evidence that there is a genuine issue of material fact with regard to whether it was a failure to connect that proximately caused plaintiff's damages.

Affirmed.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Jonathan Tukel

-5-