# STATE OF MICHIGAN

# COURT OF APPEALS

EARL H. ALLARD, JR.,

Plaintiff-Appellee,

V

CHRISTINE A. ALLARD,

Defendant-Appellant.

FOR PUBLICATION
January 31, 2017
9:05 a.m.

No. 308194
Wayne Circuit Court
Family Division
LC No. 10-110358-DM

ON REMAND

Before: M.J. KELLY, P.J., and WILDER and FORT HOOD, JJ.

WILDER, J.

This matter returns to us on remand from our Supreme Court. *Allard v Allard*, 499 Mich 932 (2016) (*Allard II*). We have been instructed to consider two issues on remand: "(1) whether parties may waive the trial court's discretion under MCL 552.23(1) and MCL 552.401 through an antenuptial agreement," and "(2) if so, whether the parties validly waived MCL 552.23(1) and MCL 552.401 in this case." *Id.* We conclude that parties cannot, by antenuptial agreement, deprive a trial court of its equitable discretion under MCL 552.23(1) and MCL 552.401. Hence, we vacate in part and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

The pertinent facts on remand remain nearly identical to those set forth in our prior opinion:

> The parties signed an antenuptial agreement on September 9, 1993, two days before their wedding on September 11, 1993. This case primarily deals with the validity and enforcement of that antenuptial agreement.

\* \* \*

-1-

The pertinent sections of the signed antenuptial agreement provide as follows:

4.     Each party shall during his or her lifetime keep and retain sole ownership, control, and enjoyment of all real, personal, intangible, or mixed property now owned, free and clear of any claim by the other party. However, provided that nothing herein contained shall be construed to prohibit the parties from at any time creating interests in real estate as tenants by the entireties or in personal property as joint tenants with rights of survivorship and to the extent that said interest is created, it shall, in the event of divorce, be divided equally between the parties. At the death of the first of the parties hereto, any property held by the parties as such tenants by the entireties or joint tenants with rights of survivorship shall pass to the surviving party.

5.     In the event that the marriage . . . terminate[s] as a result of divorce, then, in full satisfaction, settlement, and discharge of any and all rights or claims of alimony, support, property division, or other rights or claims of any kind, nature, or description incident to marriage and divorce (including any right to payment of legal fees incident to a divorce), under the present or future statutes and laws of common law of the state of Michigan or any other jurisdiction (all of which are hereby waived and released), the parties agree that all property acquired after the marriage between the parties shall be divided between the parties with each party receiving 50 percent of the said property. However, notwithstanding the above, the following property acquired after the marriage will remain the sole and separate property of the party acquiring the property and/or named on the property:

a.     As provided in paragraphs Two and Three of this antenuptial agreement, any increase in the value of any property, rents, profits, or dividends arising from property previously owned by either party shall remain the sole and separate property of that party.

b.     Any property acquired in either party's individual capacity or name during the marriage, including any contributions to retirement plans (including but not limited to IRAs, 401(k) plans, SEP IRAs, IRA rollovers, and pension plans), shall remain the sole and separate property of the party named on the account or the party who acquired the property in his or her individual capacity or name.

\* \* \*

-2-

8. Each party shall, without compensation, join as grantor in any and all conveyances of property made by the other party or by his or her heirs, devises, or personal representatives, thereby relinquishing all claim to the property so conveyed, including without limitation any dower or homestead rights, and each party shall further, upon the other's request, take any and all steps and execute, acknowledge, and deliver to the other party any and all further instruments necessary or expedient to effectuate the purpose and intent of this agreement.

\* \* \*

10. Each party acknowledges that the other party has advised him or her of the other party's means, resources, income, and the nature and extent of the other party's properties and holdings (including, but not limited to, the financial information set forth in exhibit A attached hereto and incorporated herein by reference) and that there is a likelihood for substantial appreciation of those assets subsequent to the marriage of the parties.

\* \* \*

The parties were married on September 11, 1993. During the course of the marriage, the parties held a joint checking account with Private Bank, which was closed in November 2010. There were no other jointly held accounts. Defendant worked at two different advertising agencies during the first several years of the marriage. At the end of her employment, she earned approximately $30,000 per year. In 1999, after she became pregnant with the couple's second child, defendant stopped working and did not seek further employment.

Plaintiff received numerous cash gifts from his parents during the marriage, often totaling $20,000 per year. Plaintiff also testified to having received loans from his father during the course of the marriage, and claims that he used those funds to acquire some of the real estate he purchased during the marriage. Plaintiff also formed six limited liability companies (LLCs) during the marriage and served as the sole member of these companies.

\* \* \*

Testimony during trial established that plaintiff used at least some of the LLCs as a vehicle to purchase and convey numerous real estate holdings. In addition, the marital home, which plaintiff owned before the marriage, was conveyed to one of the LLCs. Plaintiff asserted in the trial court that defendant never incurred any liability as the result of the obligations arising from these multiple transactions, and that, as required by the antenuptial agreement, defendant signed warranty deeds when properties were sold to release any dower rights she might have acquired.

-3-

* * *

After more than 16 years of marriage, plaintiff filed for divorce on July 28, 2010. On July 13, 2011, plaintiff filed a second motion for partial summary disposition regarding the antenuptial agreement. Plaintiff argued that the antenuptial agreement governed and was dispositive of all issues except for custody, parenting time, and child support. Plaintiff attached as evidentiary support for his motion: the September 9 antenuptial agreement, the deposition of John Carlisle, the deposition of Brian Carrier [Carrier worked in Carlisle's office and was the person who notarized the antenuptial agreement], and the affidavit of Sherrie Doucette [Doucette worked in Carlisle's office and was one of the witnesses who signed the antenuptial agreement]. At the August 8, 2011 motion hearing, plaintiff also introduced the deposition testimony of defendant. Defendant responded to the motion by arguing that the agreement was void because the terms of the agreement were unconscionable, defendant did not have the benefit of independent counsel, and also because the agreement was signed under duress on the day of the wedding rehearsal. Defendant also contended that a change of circumstances supported the setting aside of the agreement, asserting that the facts would show she was abused by plaintiff during the marriage and that plaintiff never intended to create a marital partnership. In support of her response opposing the motion, defendant submitted her own affidavit and plaintiff's deposition.

The trial court granted plaintiff's motion. First, the trial court determined that defendant could not establish that the contract was signed under duress because there was no evidence of any illegal action. Next, the trial court determined that the agreement was not unconscionable because its terms did not shock the conscience of the court. Last, the trial court found that there was no change of circumstances that would make enforcement of the contract unfair and unreasonable. In particular, the trial court noted that the length of a marriage and the growth of assets are not unforeseeable and therefore cannot qualify as a change of circumstances. Further, the trial court questioned the validity of defendant's claim of abuse because, as far as the trial court was concerned, it was raised at the "eleventh hour," but regardless, noted that the allegation on its face would not "rise to the level of rendering th[e] contract unenforceable . . . ." Finally, the trial court found defendant's argument—that plaintiff's lack of intent to create a marital partnership was unforeseeable—unpersuasive, noting that the clear language of the agreement allowed for each spouse to maintain separate assets.

Subsequently at trial, defendant argued that aside from the plain language of the antenuptial agreement as interpreted by the trial court, she should be able to "invade" plaintiff's personal assets based on a partnership theory. The trial court ultimately rejected this argument. The trial court also concluded "that the equitable distribution factors contemplated by MCL 552.19 and set forth in *Sparks v Sparks*, 440 Mich 141, 159-62[; 485 NW2d 893] (1992) were not applicable" because of the presence of the unambiguous antenuptial agreement.

-4-

Further, the trial court declined defendant's invitation to invade plaintiff's personal assets under MCL 552.23(1) or MCL 552.401. The court explained that if it allowed such an invasion to take place, then the right to freely contract would be jeopardized. As a result, the focus of the bench trial was to determine who owned what assets.

The record is clear that all the assets of worth were titled in either plaintiff's name, one of plaintiff's LLCs' names, or defendant's name. Given that evidence, the trial court concluded that there was little marital property to distribute. Consequently, pursuant to the antenuptial agreement, the trial court awarded plaintiff the six LLC entities, the stock he owned, and "all bank accounts presently titled in his name alone or titled in the name of his single-member LLCs." The trial court awarded defendant the stock she owned, an IRA account that was in her name, and all bank accounts that were in her name. The value of the assets awarded to plaintiff was in excess of $900,000, while the assets awarded to defendant were valued at approximately $95,000.

Because the antenuptial agreement prohibited the award of any spousal support, the trial court did not award any.

* * *

With regard to child support, the trial court used the Michigan Child Support Formula to calculate the base child support to be $3,041 a month for both children. However, the trial court also determined that application of the formula would be both unjust and inappropriate and, therefore, not in the children's best interests. Consequently, the trial court increased the base monthly child support award by $1,000. [*Allard v Allard*, 308 Mich App 536, 539-547; 867 NW2d 866 (2014) (*Allard I*), aff'd in part, vacated in part, rev'd in part 499 Mich 932 (2016) (footnotes omitted; second and third alterations added, other alterations in original).]

## II. STANDARDS OF REVIEW AND PRINCIPLES OF STATUTORY CONSTRUCTION

Under MCR 2.613(C), we review the trial court's pertinent findings of fact for clear error. "[H]owever, the trial court's ultimate decision concerning whether those facts show a waiver is a question of law reviewed de novo." *Electrolines, Inc v Prudential Assurance Co, Ltd*, 260 Mich App 144, 163; 677 NW2d 874 (2003). We also review issues of statutory interpretation de novo. *Speicher v Columbia Twp Bd of Trustees*, 497 Mich 125, 133; 860 NW2d 51 (2014).

"The primary goal when interpreting a statute is to discern the intent of the Legislature by focusing on the most reliable evidence of that intent, the language of the statute itself." *Fairley v Dep't of Corrections*, 497 Mich 290, 296-297; 871 NW2d 129 (2015). If the legislative intent can be gleaned from the statutory language, further construction is neither necessary nor permissible. *Id.* at 297.

-5-

## III. ANALYSIS

Before turning to the substantive merits of the issue before us, we thank amici curiae, the Business Law and Family Law sections of the Michigan Bar Association, for the briefs they have submitted in this matter. Given the ambit of the remand order in this case, the Business Law Section has decided to offer no argument regarding the issues now before us. The Family Law Section, however, offers an argument we feel compelled to address.

The Family Law Section posits that, by including the term "property" in MCL 557.28, the Legislature intended to limit the scope of antenuptial agreements. Specifically, the Family Law Section suggests that antenuptial agreements regarding attorney fees and spousal support do not relate to "property"—at least as that term is used in MCL 557.28—and that, as such, any waiver provision in an antenuptial agreement regarding attorney fees or spousal support is necessarily invalid. We disagree.

The term in question, "property," is not statutorily defined. "Normally, this Court will accord an undefined statutory term its ordinary and commonly used meaning." *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 493; 835 NW2d 363 (2013) (*Grange*). "However, where the Legislature uses a technical word that has acquired a particular meaning in the law, and absent any contrary legislative indication, [it is] construe[d] 'according to such peculiar and appropriate meaning.' " *Id.*, quoting MCL 8.3a ("[T]echnical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.").

There are few legal terms that carry a denotation more conceptually dense than that associated with the term "property." Property encompasses, "[c]ollectively, the rights in a valued resource such as land, chattel, or an intangible"—these collective rights are often analogized to a "bundle of sticks"—and also includes "[a]ny external thing over which the rights of possession, use, and enjoyment are exercised[.]" *Black's Law Dictionary* (10th ed). Property can be real or personal, tangible or intangible, and—in the instant context—can be considered marital or separate. The so-called "bundle" of property rights can include many diverse forms of property "interests." Such interests are so varied, and their machinations so complex, that the subject is necessarily relegated to hornbooks and treatises. See, e.g., Edwards, Estates in Land and Future Interests (4th ed).

MCL 557.28 governs the validity of contracts "*relating to property* made between persons in contemplation of marriage," providing that such contracts "shall remain in full force after marriage takes place." (Emphasis added.) It is axiomatic that money is a type of personal property, and money is undeniably the form of property most often used to make payments of any kind, including those for attorney fees and spousal support.[1] Thus, under the plain language

---

[1] By nature, spousal support involves periodic payments "designed to ensure the maintenance of a spouse for a period after the divorce." *Krist v Krist*, 246 Mich App 59, 64; 631 NW2d 53 (2001).

of MCL 557.28, an antenuptial agreement regarding attorney fees or spousal support is one "relating to" property.

We must, therefore, reject the interpretation of MCL 557.28 urged by the Family Law Section. We refuse to construe the undefined term "property" as having a meaning different from its technical legal sense. Thus, we conclude that antenuptial agreements related to attorney fees or spousal support are contracts "relating to property" under MCL 557.28.

We turn now to the true heart of the matter. The waiver question before us is one made difficult by a seeming intersection of two bedrock principles of Michigan jurisprudence: first, that the fundamental right to contract must be protected by allowing parties to contract freely and by enforcing contractual agreements;[2] second, that courts sitting in equity must be free to afford whatever relief is necessary to see done that which, in good conscience, ought to be done.[3] It is well-settled that

> [a] court possesses inherent authority to enforce its own directives. A divorce case is equitable in nature, and a court of equity molds its relief according to the character of the case; once a court of equity acquires jurisdiction, it will do what is necessary to accord complete equity and to conclude the controversy. [*Loutts v Loutts*, 298 Mich App 21, 35; 826 NW2d 152 (2012), quoting *Draggoo v Draggoo*, 223 Mich App 415, 428; 566 NW2d 642 (1997), quoting *Wiand v Wiand*, 178 Mich App 137, 144; 443 NW2d 464 (1989), quoting *Schaeffer v Schaeffer*, 106 Mich App 452, 457; 308 NW2d 226 (1981) (footnotes omitted).]

"Because divorce is not a natural or common-law right, however, a court presiding over divorce matters does not wield general equity powers but is limited to those powers specifically granted by statute." *Kasper v Metropolitan Life Ins Co*, 412 Mich 232, 262; 313 NW2d 904 (1981).

MCL 552.12 provides that divorce actions "shall be conducted in the same manner as other suits in courts of equity; and the court shall have the power to award issues, to decree costs, and to enforce its decrees, as in other cases." In that same equitable vein, MCL 552.401 provides,

> The circuit court of this state may include in any decree of divorce or of separate maintenance entered in the circuit court appropriate provisions awarding to a party all or a portion of the property, either real or personal, owned by his or her spouse, as appears to the court to be equitable under all the circumstances of the case, if it appears from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property. The decree, upon becoming final, shall have the same force and effect as a quitclaim deed of the

---

[2] *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 212; 737 NW2d 670 (2007)

[3] See, e.g., *Haack v Burmeister*, 289 Mich 418, 425; 286 NW 666 (1939).

real estate, if any, or a bill of sale of the personal property, if any, given by the party's spouse to the party.

In essence, the above language is a codification of the concept of the equitable trust, also known as the "constructive" trust. Such trusts recognize "the broad doctrine that equity regards and treats as done what in good conscience ought to be done." *Haack v Burmeister*, 289 Mich 418, 425; 286 NW 666 (1939) (quotation marks and citations omitted). In other words, if a "party contributed to the acquisition, improvement, or accumulation of [] property," and therefore *should* have an interest in that property, equity will make it so.

Similarly, MCL 552.23(1) provides,

Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and custody of either party, the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

Through the above statutes, it is evident that our Legislature has endeavored to codify the axiom that, in divorce actions, "a division of property must be equitable . . . in [] light of the particular facts." See *Mitchell v Mitchell*, 333 Mich 441, 446; 53 NW2d 325 (1952).

Notwithstanding, plaintiff contends that parties can, by way of an antenuptial agreement, divest a circuit court of its statutory authority to effectuate an equitable settlement by "invading" separate assets under MCL 552.23(1) and MCL 552.401. Plaintiff's argument hinges on MCL 557.28 ("A contract relating to property made between persons in contemplation of marriage shall remain in full force after marriage takes place."). It is true that, "[w]hen contracts are formed, the parties to the contract are the lawmakers in such realm and deference must be shown to their judgments and to their language as with regard to any other lawmaker." *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 213; 737 NW2d 670 (2007). However, "contracts founded on acts prohibited by a statute, or contracts in violation of public policy, are void." *Maids Int'l, Inc v Saunders, Inc*, 224 Mich App 508, 511; 569 NW2d 857 (1997).

In its remand order, our Supreme Court provided some guidance, directing our attention to two cases: *Staple v Staple*, 241 Mich App 562; 616 NW2d 219 (2000), and *Omne Fin, Inc v Shacks, Inc*, 460 Mich 305; 596 NW2d 591 (1999) (*Omne*). With regard to the latter case, the Supreme Court's remand order did not specify whether we should consider Justice Kelly's lead opinion, Justice Corrigan's concurrence, or both opinions. In any event, we find all three of the

referenced opinions instructive here.[4]  In particular, consideration of the relationship between *Staple* and the *Omne* opinions requires careful examination of two oft-repeated principles; first, that "[w]aiver is the voluntary and intentional relinquishment of a known right," see *Varran v Granneman*, 312 Mich App 591, 623; 880 NW2d 242 (2015) (emphasis added), and second,  that "the freedom to contract does not permit contracting parties to impose obligations upon and waive the rights of third parties in the absence of legally cognizable authority to do so," *Woodman ex rel Woodman v Kera LLC*, 486 Mich 228, 243; 785 NW2d 1 (2010).

At issue in *Staple* was "the question of when an agreed-upon alimony provision in a divorce judgment entered pursuant to a settlement is subject to future modification, and when it is final and nonmodifiable."  *Staple*, 241 Mich App at 564.  The *Staple* conflict panel summarized its holding as follows:

> [W]e adopt a[n] . . . approach that allows the parties to a divorce settlement to clearly express their intent to forgo *their* statutory right to petition for modification of an agreed-upon alimony provision, and to clearly express their intent that the alimony provision is final, binding, and thus nonmodifiable.  Of course, MCL 552.28 creates a statutory right *in either party* to seek modification of alimony.  However, like many other statutory and constitutional rights, parties may waive *their* rights under MCL 552.28.  If the parties to a divorce agree to waive the right to petition for modification of alimony, and agree that the alimony provision is binding and nonmodifiable, and this agreement is contained in the judgment of divorce, their agreement will constitute a binding waiver of rights under MCL 552.28.  [*Id.* at 568 (emphasis added).]

Thus, *Staple* dealt with the straightforward question of whether parties can, by contract, knowingly and willingly waive their own statutory rights.

Contrastingly, in *Omne*, our Supreme Court grappled with "the question whether parties may contractually agree to venue" before any cause of action arises.  *Omne*, 460 Mich at 311 (opinion of KELLY, J.).  Noting that parties can duly waive any objection to venue so long as they do so after a cause of action arises, Justice Kelly "conclude[d] that contractual provisions establishing venue for *potential* causes of action that may arise *after* the contract is executed are unenforceable."  *Id.* at 317 (first emphasis added).  In pertinent part, Justice Kelly reasoned, "Had the Legislature intended to enforce contractual agreements regarding venue, it would have included such a provision . . . .  [E]nforcement of contractual provisions establishing venue for causes of action that may arise after the contract is executed would contradict the manifest intent of the Legislature."  *Id.* at 313.  Justice Corrigan reached the same result for differing reasons. She reasoned, "under the plain language of the [venue transfer] statute [MCL 600.1651], the trial court must transfer an action brought in an improper venue on the defendant's timely motion,

---

[4] We note, however, that because neither *Omne* opinion was joined by a majority of the justices—Justice Taylor did not participate—neither is binding here under the doctrine of stare decisis.  See *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 535; 821 NW2d 117 (2012).

regardless of whether the defendant had contractually agreed to the venue." *Omne*, 460 Mich 318-319 (opinion of CORRIGAN, J.). Hence, *Omne* involved not only the straightforward question involved in *Staple*—i.e., whether parties can agree to waive their own statutory rights—but also whether such an agreement can be enforced when it openly defies the Legislature's statutorily expressed intent.

In light of the contrast between *Staple* and *Omne*, the issue before us crystallizes into a rational paradigm; it changes from a seeming conflict between equity and the freedom to contract to a simple matter of statutory interpretation. In concert, MCL 552.12, MCL 552.23(1), and MCL 552.401 clearly demonstrate that the Legislature intends circuit courts, when ordering a property division in a divorce matter, to have equitable discretion to invade separate assets if doing so is necessary to achieve equity. The above statutes do not afford the parties to a divorce any statutory right to *petition* for invasion of separate assets—at least none that is distinct from the parties' right to petition for divorce in the first instance. Rather, the statutes simply empower the circuit court. Hence, parties have no discernible rights to waive under MCL 552.23(1) and MCL 552.401. Moreover, to the extent that parties attempt, by contract, to bind the equitable authority granted to a circuit court under MCL 552.23(1) and MCL 552.401, any such agreement is necessarily void as against both statute and the public policy codified by our Legislature. Put differently, the parties to a divorce cannot, through antenuptial agreement, compel a court of equity to order a property settlement that is *in*equitable. Although parties have a fundamental right to contract as they see fit, they have no right to do so in direct contravention of this state's laws and public policy. See *Rory v Continental Ins Co*, 473 Mich 457, 470; 703 NW2d 23 (2005) ("[A]n unambiguous contractual provision . . . is to be enforced as written *unless* the provision would violate law or public policy.") (emphasis added).

Our conclusion in this regard is buttressed by the fact that MCL 552.23(1) grants a circuit court equitable authority over not just the parties before it but also over the interests of "any children of the marriage who are committed to the care and custody of either party[.]" Time and again, our Courts have recognized that the parties to a divorce cannot, even by mutual agreement, relieve a circuit court of its duty to independently safeguard the interests of minor children who are involved. See, e.g., *Grange*, 494 Mich at 533 ("[T]he family court alone is charged with making determinations in the child's best interests, and stipulation by the parties to an alternative custody arrangement cannot usurp that authority."); *Harvey v Harvey*, 470 Mich 186, 194; 680 NW2d 835 (2004) ("Permitting the parties, by stipulation, to limit the trial court's authority to review custody determinations would nullify the protections of the Child Custody Act and relieve the circuit court of its statutorily imposed responsibilities."); *Holmes v Holmes*, 281 Mich App 575, 590; 760 NW2d 300 (2008) ("Parents may not bargain away a child's welfare and rights, including the right to receive adequate child support payments. An agreement by the parties regarding support will not suspend the authority of the court to enter a support order.") (citation omitted); *Laffin v Laffin*, 280 Mich App 513, 518; 760 NW2d 738 (2008) ("It is a well-established principle in Michigan that parties cannot bargain away their children's right to support."). We rule in accord with the great weight of such authority. Parties cannot, by mutual agreement, strip a circuit court of its authority under MCL 552.23(1) to order relief that the court, in its sound discretion, deems necessary to adequately support and maintain the parties' minor children.

Here, the trial court deviated from the Michigan Child Support Formula (MCSF), finding that it was in the best interests of the minor children to award defendant an extra $1,000 per month in base child support. But the trial court did so only after concluding that the parties' antenuptial agreement precluded it from invading plaintiff's separate assets under MCL 552.23(1) and MCL 552.401. Thus, contrary to the plain language of MCL 552.23(1), it appears that the trial court was under the erroneous impression that it lacked authority to award defendant spousal support (along with any portion of plaintiff's real or personal property) if doing so was necessary to ensure the suitable support and maintenance of the children.[5] It is unclear whether the trial court would have ruled differently but for such error.

## IV. CONCLUSION

In sum, we conclude that the parties could not, and ergo did not, waive the trial court's equitable discretion under MCL 552.23(1) and MCL 552.401. By holding otherwise, the trial court erred, but it is unclear from the record what impact—if any—such error had on the trial court's ultimate rulings regarding property division, spousal support, and child support. Hence, we vacate the trial court's pertinent orders (along with the relevant portion of the parties' divorce judgment) and remand for further proceedings consistent with (1) this opinion, (2) the affirmed

---

[5] While on its face *spousal* support may not appear to relate to the suitable support and maintenance of children, the support and maintenance of children by *child* support alone may be insufficient in a particular case. The MCSF is a formula and, like any formula, is formulaic and inflexible. A formulaic and inflexible approach to the resolution of a particular problem, may, of course, find itself at loggerheads with the very concept of equity. Suffice it to say, there may be times when an award of alimony in gross or spousal support is necessary, under the circumstances, to address the suitable support and maintenance of children, and we do not second-guess the Legislature's policy judgment in that regard. Indeed, such policy choices involve "a decision-making process for which the judicial branch is the least well-equipped among the branches of government." See *Kyser v Kasson Twp*, 486 Mich 514, 537; 786 NW2d 543 (2010).

portions of *Allard I*, and (3) our Supreme Court's decision in *Allard II*.[6] We do not retain jurisdiction. Because this matter involves questions of public policy, no costs may be taxed under MCR 7.219.

/s/ Kurtis T. Wilder
/s/ Michael J. Kelly
/s/ Karen M. Fort Hood

---

[6] Notwithstanding anything to the contrary in this opinion, and pending further order of the trial court, plaintiff is hereby ordered to continue paying child support in the same manner and amount as he was under the trial court's previous orders. See MCR 7.216(A) ("The Court of Appeals may, at any time, in addition to its general powers, in its discretion, and on the terms it deems just . . . enter any judgment or order or grant further or different relief as the case may require").