*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JASON M. CURIS and LAURYN M. CURIS,

        Plaintiffs/Counterdefendants-
        Appellants,

v

JOHN A. JAMES, SHARON N. JAMES, PERRY
JOHNSON, PETER MANNINO, and MARIE
MANNINO,

        Defendants-Appellees,

and

REGINALD KAKOS, JESSICA KAKOS, ROMAN
SHLAFER, MILENA SHLAFER, RAMANI
VADLAMURI, SREEKIRTHI BHAGYA
VADLAMURI, JACQUES G. DARMON, MARK
C. MILGROM, Trustee of MARK C. MILGROM
LIVING TRUST, MOONDEEP AGGARWAL,
KAMNA AGGARWAL, MAZEN SHINA, NIRAN
SHINA, LINDA SOLOMON, MONA
RAPPAPORT, Trustee of DANIEL J. RAPPAPORT
MARITAL TRUST, MARVIN FISHMAN,
HEMANT H. SHAH, NAYANA H. SHAH, KEN
MORGAN, SIMEN SAVAYA, and RACHEL
SAVAYA,

        Defendants/Counteplaintiffs-
        Appellees.

UNPUBLISHED
January 18, 2024

No. 365003
Oakland Circuit Court
LC No. 2021-189533-CH

Before: GLEICHER, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

This property dispute involves the proposed redevelopment by plaintiffs/counterdefendants, Jason M. Curis and Lauryn M. Curis (individually, "Jason" and "Lauryn"; collectively, "the Curises"), of property previously used as an elementary school. The trial court ruled in favor of defendants, various residents of the relevant subdivision where the subject property lies,[1] on the parties' competing motions for summary disposition. On appeal, the Curises argue that the trial court erred by (1) refusing to consider certain evidence limiting the proposed use of the property, and (2) determining that the Curises' proposed use constituted a more serious violation of the subdivision's building and use restrictions (BURs) than the former school. Because the trial court abused its discretion by excluding the contested evidence, and because a question of fact exists—under the relevant factors elicited in *Bloomfield Estates Improvement Ass'n v Birmingham*, 479 Mich 206; 737 NW2d 670 (2007)—concerning whether the relevant BURs were waived via construction and operation of the school, we reverse and remand for further proceedings.

## I. BACKGROUND

Franklin Oaks is a residential subdivision in Farmington Hills established in the mid-1940s and initially divided into 18 separate lots. In 1945, the subdivision's creators established BURs affecting all 18 lots (the 1945 BURs). The intent and purpose of the 1945 BURs was to ensure that Franklin Oaks "develop[ed] into a residential community of the highest type." Among other things, the 1945 BURs limited construction to one single private residence per lot. The essential issue here is whether these restrictions, particularly that limiting construction to one residence per lot, remain in force and circumscribe the Curis's redevelopment options for the property at issue.

In 1963, Farmington Public Schools purchased part of lot 11 and all of lot 12 (the school property) in Franklin Oaks and subsequently constructed Fairview Elementary School (the school). A 1965 document entitled "Amendment of Restrictions Agreement" (the 1965 Amendments) was signed by the Farmington Public Schools and the owners of lot 7 and part of lot 8, Mr. and Mrs. Goldman. The 1965 Amendments purported to create several new restrictions regarding access to the school, parking, landscaping, and future building enlargement. Specifically, the amendments waived the parties' rights under the 1945 BURs "to the extent necessary to permit the construction . . . of an elementary school." They also set various requirements regarding school access, parking, and landscaping. The school was demolished in 2012, and the district in 2015 released a request for proposals (RFP) to purchase the now-vacant former school property.

The Curises have lived in Franklin Oaks since 2013, when they purchased lot 13 subject to "[BUR]s and easements of record[.]" They purchased the school property in 2018, which, as explained above, included lot 12 and part of lot 11 of the original plat. According to the deed, this purchase was subject to the 1945 BURs and the 1965 Amendments, except those based on race, religion, or similar factors.

According to Jason's first affidavit, he initially planned some unspecified form of "single family residential development at the subject property . . . ." During Jason's deposition testimony,

---

[1] All parties involved in this case are provided in the caption of this opinion. For brevity and ease of reference, defendants will be referred to collectively as "the residents."

however, he stated, "I didn't know what I was planning on doing [with the property.]"  Asked of his current plan, Jason said, "I don't have a use for [the property] right now.  I don't know what I want to do with it just yet."  Nevertheless, Jason did not believe he was restricted by "the original [BUR]s," and he believed he could develop anything allowed under the city's zoning ordinances. Jason acknowledged that the applicable ordinance would permit him to construct 21 separate dwelling units on the subject property, including mobile homes.[2]

The Curises filed a complaint against the residents, along with any unknown heirs, devisees, and assignees, in August 2021.  They asserted one count each for quiet title and declaratory relief, requesting that the court enter a judgment (1) that the residents waived the subdivision's BURs and (2) allowing development of the subject property in conformance with applicable zoning restrictions.  They also asserted a separate quiet-title claim, alleging that the subdivision's BURs "are extinguished by statute" under the MRTA.[3]  The complaint asserted that the Curises "intend[] to use the property for single family residential purposes in compliance with the City of Farmington Hills RA-1 single family Residential use as allowed by the City of Farmington Hills Zoning and Use Regulations."

Numerous residents answered and concurrently filed a countercomplaint against the Curises, requesting that the court (1) enter a judgment upholding the applicability of the subdivision's BURs "other than those based on race, color, religion, sex, handicap, familial status or natural origin," and (2) enjoin the Curises, their successors, and their assignees from developing the subject property contrary to the BURs, particularly the limitation of one residential structure per lot.  They also requested the same essential relief, but applicable to all real property in the subdivision.

The Curises moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that the subdivision's 1945 BURs were waived by the prior construction and operation of the school on the subject property, and that their development of the property should, therefore, be limited only by the city's zoning restrictions.  According to the Curises, subdivision residents acquiesced to the building and operation of the school, which altered the character and use of the property and constituted a substantial, extensive, and continuous violation of the 1945 BURs.   Further, this violation was "significantly more serious than any residential plans allowed by the City of Farmington Hill[s] RA-1 Single Family Residential ordinance."

The residents also moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that the 1945 BURs remained in force and were explicitly accepted by the Curises when they purchased their property.   Specifically, the 1945 BURs were never waived because (1) notwithstanding the former school, the subdivision's character remained consistent with that intended and fixed by the 1945 BURs, and (2) the school property has been vacant since 2012, before the Curises ever purchased property in the subdivision, making the former school "moot"

---

[2] See Farmington Hills Code of Ordinances, Ch 34, § 3.1.4 (requirements and restrictions regarding RA-1 One Family Residential zoning district).

[3] The parties agree that the MRTA is irrelevant in this case, which should be decided solely on the waiver issue.

in this case. The residents also asserted that uses allowed under the city's applicable zoning ordinance—particularly the possible construction of 21 separate homes, including mobile homes, on the two lots at issue—would "drastically change the character of the subdivision and be drastically counter to the platters' intent."

Responding to the residents' motion, the Curises clarified an intent to develop the subject property "into four residential lots[,] . . . [which] is less serious than the elementary school previously built [there]." The Curises provided with their response a survey depicting their planned division of the property. They also provided a new affidavit from Jason, in which he averred that the attached survey represented the plan for the property.

In reply, the residents argued that the Curises violated MRE 408 by attaching the recent survey produced in the course of compromise negotiations, and that Jason's second affidavit improperly contradicted his deposition testimony. Attached to the residents' reply is an August 2022 email exchange between the parties' attorneys, with the subject "Settlement Pursuant to MRE 408." In the first email, the Curises' attorney asked whether the residents "intend to accept the settlement" and described the offer as "reasonable compared to alternative possible developments." The residents' attorney responded that his clients "are not willing to agree to four lots. They would be willing to consider two lots."

The trial court issued an opinion and order ruling in favor of the residents. First, the court declined to consider the recent survey and Jason's second affidavit submitted by the Curises. Specifically, it determined that (1) Jason's second affidavit contradicted his deposition testimony about using the subject property for whatever city ordinances would allow; (2) the position taken by the Curises in the affidavit and in the survey contradicted their earlier position throughout the case; and (3) the Curises' use of the survey as an exhibit opposing summary disposition violated MRE 408. Next, the court concluded that the 1945 BURs were not waived because insufficient evidence supported that the former school or any of the other alleged violations (1) were more serious than the Curises' proposed use for the subject property and (2) altered the subdivision's character such as to defeat the purpose of the 1945 BURs. Ultimately, the trial court upheld the applicability of the contested BURs, granted the residents' motion for summary disposition, denied the Curises' motion for summary disposition, and dismissed the Curises' complaint. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. at 160. "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*.

A movant satisfies its burden under MCR 2.116(C)(10) by "submitting affirmative evidence that negates an essential element of the nonmoving party's claim, or by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of

-4-

the nonmoving party's claim." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016) (cleaned up). "[T]he nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id*. (citations omitted; quoting *Quinto v Cross and Peters Co*, 451 Mich 359, 362-363; 547 NW2d 314 (1996)).

"A trial court's decision whether to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion." *Alpha Capital Mgmt v Rentenbach*, 287 Mich App 589, 620; 792 NW2d 344 (2010), lv den 488 Mich 948 (2010). "The trial court abuses its discretion if its decision is outside the range of principled outcomes." *Id*. "To the extent that this issue involves the meaning of a Michigan Rule of Evidence, we consider this legal issue de novo." *Id*.

### III. ANALYSIS

The trial court determined that Jason's second affidavit contradicted his deposition testimony, the position taken by the Curises via the affidavit and survey contradicted their earlier position throughout the case, and the survey violated MRE 408. The Curises argue that the trial court improperly excluded from evidence the survey depicting their proposed development. We also address whether the trial court abused its discretion by excluding Jason's related affidavit.

MRE 408 provides:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

As an initial matter, based on the August 2022 email exchange between the parties' attorneys, the Curises' plan to develop the subject property into four residential lots, as depicted by the survey, was initially discussed as part of a "Settlement Pursuant to MRE 408." The residents were unwilling to consider the Curises' "offer" of "four lots." Further, while the Curises claim that they submitted the survey for another proper purpose under the court rule, their asserted purpose is not one enumerated by MRE 408. Rather, they proposed the survey as evidence supporting waiver of the 1945 BURs and, therefore, to prove the invalidity of the residents' counterclaims.

However, the survey was still admissible under MRE 408 as otherwise discoverable evidence sufficiently distinct from the parties' actual settlement negotiations. See *In re Estate of*

*Doyle v Covenant Med Ctr, Inc*, unpublished[4] per curiam opinion of the Court of Appeals, issued March 3, 2016 (Docket No. 324337), p 14 n 10 (Because "MRE 408 'does not require the exclusion of any evidence *otherwise discoverable* merely because it was presented in the course of compromise negotiations[,]' " the plaintiff "was free [to] pursue the source of . . . factual information [contained in the defendant's otherwise inadmissible settlement offer] and submit that evidence in an admissible form with a proper foundation.").

Here, the Curises did not submit evidence of any settlement negotiations themselves or statements made during the course of such negotiations. Rather, they presented the survey factually depicting their clarified, proposed use for the property. Further, although MRE 408 "does not *require*" (emphasis added) the exclusion of otherwise discoverable evidence under the rule, the trial court nevertheless acted outside the range of principled outcomes and abused its discretion by excluding the survey. Specifically, the trial court should have considered the Curises' clarified plan and position as depicted by the survey, especially given that the alternate proposed use actually considered by the trial court—development of up to 21 units on the property—was elicited by questioning from defense counsel regarding only what Jason believed would be permitted under the applicable ordinance.

We similarly conclude that the trial court abused its discretion by excluding Jason's second affidavit. "[A] witness is bound by his or her deposition testimony, and that testimony cannot be contradicted by affidavit in an attempt to defeat a motion for summary disposition." *Broz v Plante & Moran, PLLC (On Remand)*, 331 Mich App 39, 56; 951 NW2d 64 (2020). In *Gamet v Jenks*, 38 Mich App 719, 726, 197 NW2d 160 (1972),[5] this court observed that

> [d]eposition testimony damaging to a party's case will not always result in summary [disposition]. However, when a party makes statements of fact in a 'clear, intelligent, unequivocal' manner, they should be considered as conclusively binding against him in the absence of any explanation or modification, or of a showing of mistake or improvidence. The purpose of [the predecessor court rule regarding summary disposition] is to allow the trial judge to determine whether a factual issue exists. This purpose is not well served by allowing parties to create factual issues by merely asserting the contrary in an affidavit after giving damaging testimony in a deposition. [(citations omitted).]

---

[4] "Unpublished opinions are . . . not binding authority but may be persuasive or instructive." *Haydaw v Farm Bureau Ins. Co.*, 332 Mich App 719, 726 n 5, 957 NW2d 858 (2020).

[5] Although this Court is not required to follow cases decided before November 1, 1990, see MCR 7.215(J)(1), a published case decided by this Court "has precedential effect under the rule of stare decisis," MCR 7.215(C)(2). See also *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (stating that although this Court is not "strictly required to follow uncontradicted opinions from this Court decided before November 1, 1990," those opinions are nonetheless "considered to be precedent and entitled to significantly greater deference than are unpublished cases.").

Consistent with this rationale, a party may provide an affidavit to explain, clarify, or expand upon deposition testimony, especially where the deposition testimony was not unequivocal. *Wallad v Access BIDCO, Inc*, 236 Mich App 303, 312-313, 600 NW2d 664 (1999); see also *Broz*, 331 Mich App at 56 ("although a witness is bound by his or her deposition testimony, an affidavit that clarifies or expands upon previous testimony is not prohibited from consideration.").

Here, the Curises generally asserted an intent throughout the case to develop some unspecified residential use at the property consistent with the applicable zoning ordinance. But Jason testified that he was uncertain of his particular plans for the property. Questioned by defense counsel, Jason acknowledged believing that he could, legally, develop anything allowed by the city. Jason later averred that he planned a "single family residential development [at] the subject property in conformance with the City of Farmington Hills, RA-I single family Residential Ordinance as represented in the attached survey."

We agree with the Curises that Jason never testified to any definite plan for the property, let alone one involving construction of 21 separate units. Jason's testimony on the Curises' proposed use—that he (1) had no specific plan for the property "just yet," i.e., at the time of his deposition, and (2) believed he was only restricted by the applicable zoning ordinance—was far from a clear, unequivocal statement of fact on the matter. As such, the Curises properly submitted Jason's second affidavit (and the related survey) to clarify and expand upon his earlier uncertainty concerning plans for the property. Accordingly, the trial court abused its discretion by excluding Jason's second affidavit.[6]

The Curises argue further that the trial court erred in evaluating the factors under *Bloomfield Estates*, 479 Mich 206. Properly considering Jason's second affidavit and the related survey under the applicable factors, we conclude that a question of fact exists concerning waiver of the 1945 BURs.

Property owners in Michigan may "create and enforce covenants affecting their own property." *Id*. at 214. "Such deed restrictions generally constitute a property right of distinct worth." *Id*. (quotation marks and citation omitted). In *Bloomfield*, the Michigan Supreme Court stated, "If a deed restriction is unambiguous, we will enforce that deed restriction as written unless

---

[6] We note that the trial court potentially applied erroneous reasoning by commenting that the affidavit and survey *both* contradicted the Curises' *general position* throughout the case. The trial court did not support this analysis with any authority, and the only authority on this issue presented in the trial court and on appeal relates to affidavits contradicting deposition testimony, not other documents contradicting a parties' general position in court filings. See *Peace v State Farm Mut Auto Ins, Co*, unpublished per curiam opinion of the Court of Appeals, issued January 21, 2016 (Docket No. 323891), p 4 n 2 ("while it is true that a litigant cannot create a question of fact by offering her own affidavit to contradict her own sworn deposition testimony, [the defendant] offers no authority to suggest that this rule has been applied to documents other than affidavits or personal statements by the individual . . ."). In any event, any potential error in this regard was cumulative and need not be discussed further.

the restriction contravenes law or public policy, or *has been waived by acquiescence to prior violations . . . .*" *Id.* (emphasis added).

> When determining whether prior acquiescence to a violation of a deed restriction prevents a p[arty] from contesting [a later] violation, we compare the character of the prior violation and the [later] violation. Only if the [later] violation constitutes a "more serious" violation of the deed restriction may a p[arty] contest the deed restriction despite the p[arty]'s acquiescence to prior violations of a less serious character. In general, a "more serious" violation occurs when a particular use of property constitutes a more substantial departure from what is contemplated or allowable under a deed when compared to a previous violation. [*Id.* at 219.]

This determination "will hinge on the facts of a particular case," but courts may consider:

> (1) whether the later violation involved the erection of a structure where no such structure had previously been permitted; (2) whether the later violation constituted a more extensive violation of restrictions on the size or extent of a building; (3) whether the later violation increased the use of land from a sporadic violation of the restriction to a continuous violation; (4) whether the later violation significantly increased the noise or pollutant level on restricted land; (5) whether the later violation increased the level of traffic occasioned by the prior violation; (6) whether the later violation permitted an action that had been previously prohibited; and (7) whether the later violation altered in some material respect the character of the use of the restricted property. [*Id.* at 219-220 (footnotes omitted).]

See also *Carey v Lauhoff*, 301 Mich 168, 174; 3 NW2d 67 (1942) ("The true rule seems to be that, even after one or more breaches [of a BUR], equity will grant relief if the restriction can be shown to be of value to [the] complainant, and such breaches have not resulted in a subversion of the original scheme of development resulting in a substantial, if not entire, change in the neighborhood."); *Rofe v Robinson*, 126 Mich App 151, 155; 336 NW2d 778 (1983) ("There is no waiver where the character of the neighborhood intended and fixed by the restrictions remains unchanged.")[7]

> (1) Whether the later violation involved the erection of a structure where no such structure had previously been permitted.

This factor is neutral between the school and the Curises' proposed use. Importantly, both developments involved or would involve the erection of a structure or structures prohibited by the 1945 BURs. The school built in the 1960's was certainly not a residential structure as required by

---

[7] While the residents cite to both these cases in addition to *Bloomfield Estates*, the test of waiver has seemingly evolved from these earlier cases' focus on a neighborhood's overall character to the evaluation of the relative seriousness of any prior violations, as articulated in *Bloomfield Estates*. In analyzing this issue, we apply the Supreme Court's more recent standard from *Bloomfield Estates* and the factors articulated therein.

the 1945 BURs.  And the Curises' proposed use, while only involving residential development, calls for constructing one more residential structure per lot than allowed under the 1945 BURs.

(2) Whether the later violation constituted a more extensive violation of restrictions on the size or extent of a building.

This factor somewhat favors the school as the more serious violation.  As discussed, both developments involved or would involve the erection of a structure or structures prohibited by the 1945 BURs.  However, the size and extent of the former school constituted a more serious violation than would the Curises' proposed development.  The school was a large, nonresidential building, whereas the Curises plan involves developing four residences essentially, if not technically, consistent with the 1945 BURs.  While the plan would add one more residence per existing lot than allowed under the restrictions, the four new lots would still be of substantial size and thus consistent with the neighborhood's intended and longstanding character.[8]

(3) Whether the later violation increased the use of land from a sporadic violation of the restriction to a continuous violation.

This factor is neutral between the school and the Curises' proposed use.  The school operated for over 40 years in violation of the 1945 BURs.  At the same time, the Curises' development would involve construction of physical structures that would violate the 1945 BURs in a similarly permanent, and thus presumably continuous, manner.  To the extent the residents emphasize that the school was demolished in 2012, it nonetheless constituted a continuous violation for more than four decades.

(4) Whether the later violation significantly increased the noise or pollutant level on restricted land.

This factor favors the school as the more serious violation.  Admittedly, the 1965 Amendments included various provisions to mollify potential adverse effects, particularly traffic and noise, from the school.  Nonetheless, it is intuitively clear to this Court that the addition of just two more residential lots— not significantly smaller than other lots in the subdivision—on the subject property would not significantly increase the noise or pollutant level of the land, especially when compared to the former school.

(5) Whether the later violation increased the level of traffic occasioned by the prior violation.

For similar reasons, this factor also favors the school as the more serious violation.  Specifically, despite apparent efforts to control traffic from the former school, adding just two

---

[8] Notably, while the Curises' survey shows that their proposed lots would respectively measure 2.33, 3.1, 3.14, and 3.89 acres, there is nothing in the record to definitively establish the comparative size of the subdivision's other lots.  But viewing the survey alongside the images of the subdivision's original plat and current layout, the proposed lots do not appear significantly— if at all—smaller than numerous of the subdivision's existing lots.

additional residential lots on the property would not significantly increase the traffic level of the land compared to a public and frequently-visited elementary school.

(6) Whether the later violation permitted an action that had been previously prohibited.

This factor is neutral between the school and the Curises' proposed use. As discussed under the first factor, both developments involved or would involve the erection of a structure or structures prohibited by the 1945 BURs.

(7) Whether the later violation altered in some material respect the character of the use of the restricted property.

This factor favors the school as the more serious violation. While the Curises' plan would add one more residence per existing lot than allowed under the restrictions, the four new lots would still be of substantial size and, as already mentioned, thus consistent with the neighborhood's intended and longstanding character. And the plan maintains the residential use mandated by the 1945 BURs. In contrast, the school was contrary to the subdivision's intended character as "a *residential* community of the highest type" (emphasis added), and to the residential use requirement mandated by the 1945 BURs.

Given that the balance of the *Bloomfield* factors support that the school constituted a more substantial departure from the 1945 BURs than the Curises' proposed development would, the trial court erred by finding, as a matter of law, that these restrictions remained in effect, i.e, were not waived by the former school. This issue should have been submitted to a fact-finder.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro